**Maurice Jabarr CHARLES, Appellant,**

v.

**The STATE of Texas.**

**Nos. 1729–03, 1730–03, 1731–03.**

Court of Criminal Appeals of Texas.

Oct. 6, 2004.

Brian W. Wice, Houston, for Appellant.

Eric Kugler, Asst. District Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

## *OPINION*

COCHRAN, J., delivered the opinion of the Court, joined by MEYERS, PRICE, WOMACK, JOHNSON and HOLCOMB, JJ.

In this case we hold that an appellate court, in its review of a trial court's ruling on a motion for new trial: 1) should apply a deferential standard of review to the trial court's resolution of historical facts; and 2) may rely upon implied findings of fact that are supported by the record to uphold the trial court's ruling, even when the trial court is not faced with expressly conflicting affidavits or testimony.[1] We therefore affirm the Fourteenth Court of Appeals, which had held the same.[2]

### I.

Appellant, a fourteen-year-old boy, was certified as an adult to stand trial in district court. He pleaded guilty before a jury to three offenses—attempted burglary, aggravated kidnapping, and aggravated robbery—stemming from two separate criminal episodes.

The first episode involved an attempted burglary of the home of the grandmother of one of appellant's friends. Appellant and another boy were seen leaving the area after dropping a crowbar and claw hammer into a neighbor's trash can. The grandmother came home to find the burglar bars on her patio door pried open and the door lock broken. She called the police, and officers soon returned with appellant and the other boy in tow. She confronted appellant, who was sitting in the police car, and said "How could you do this? You've been in my house. Why did you do it?" Appellant told her that "he could have taken something if he had want[ed] it because he had been in my house."

The second, more serious, episode occurred two months later. Appellant and several friends, all wearing ski masks and

---

1. We granted appellant's three grounds for review:
 1. The court of appeals erred in relying on a presumption that the trial court disbelieved appellant's affidavits introduced at the hearing on his motion for new trial because appellant is precluded from rebutting this presumption pursuant to Tex.R.App. P. 21.8(b).
 2. The court of appeals erred in holding that a deferential standard of review applies to the trial court's resolution of historical facts even where, as here, they are not based on conflicting affidavits.
 3 The court of appeals erred in holding that counsel's advice to appellant to plead guilty because there was no viable legal challenge to appellant's confession was objectively reasonable because it was informed by his objectively unreasonable decision to forego any investigation whatsoever into the facts and circumstances.

 Because we reject appellant's first two grounds and the third ground depends upon a favorable finding on at least one of the first two issues, we dismiss appellant's last ground for review as improvidently granted.

2. *Maurice Jabarr Charles v. State,* Nos. 14–01–1247–CR–14–01–1249–CR 2003 WL 21511268, 2003 Tex.App. LEXIS 5639 (Tex. App.-Houston [14th Dist.] July 3, 2003) (not designated for publication).

carrying guns, drove into a park at night and accosted a young woman and her boyfriend. They robbed the boyfriend, kicked him, ordered him to take off his shorts, threatened to shoot him if he moved, and stole his car. They made the young woman get into the trunk of her car and then drove off with her in it. The kidnappers eventually stopped and opened the car trunk. Appellant held a pistol and demanded that the young woman give them her jewelry. She refused, but appellant hit her on the head with his fist. She gave them her jewelry. Appellant took her ring, pulled her out of the trunk by her hair, and threw her on the ground. According to the victim, both appellant and one of his friends raped her. They threw her back in the trunk when her car alarm suddenly went off. Fortuitously, a police officer was driving by; he saw them and gave chase. After a high-speed car chase, the kidnappers finally stopped in a field and fled on foot. The police officer rescued the young woman, who became pregnant as a result of the rape. Appellant was taken into custody a few days later after the ring that he had taken from the victim was recovered. After being given his statutory juvenile warnings from a magistrate, appellant hand-wrote a three-page statement. He admitted that he had participated in the robbery-kidnapping, but he denied committing any rape and minimized his involvement.

During the defense punishment case-in-chief, appellant testified to his remorsefulness and potential for rehabilitation. Then he called twelve other witnesses on his behalf. The jury sentenced him to fifteen years in prison for the aggravated robbery, forty years for the aggravated kidnapping, and a suspended three-year sentence for the attempted burglary.

Appellant filed a written motion for new trial. He asserted ineffective assistance by his trial counsel and alleged that his attorney did not conduct any independent investigation into the voluntariness of his confession. Appellant claimed that if there were a chance he could have suppressed his written statement, he would not have pleaded guilty.

Appellant specifically requested, in italics, that the hearing on the motion for new trial be conducted by affidavits. The trial judge signed appellant's presentment order, and, in conformity with appellant's explicit request, conducted the hearing by affidavits.[3] The trial judge denied the motion for new trial.

The court of appeals held that appellant failed to show that the trial court erred in overruling his motion for new trial.

## II.

Appellant argues that Texas Rule of Appellate Procedure 21.8(b),[4] which forbids a trial judge from summarizing or commenting on the evidence when he rules on a motion for new trial, allowed the court of appeals to create an "irrebuttable presumption" that the trial court disbelieved appellant's affidavits. According to appellant, if the trial court *had* believed his affidavits, then it should have granted him a new trial based on his claim of ineffective assistance of counsel. He concludes that the court of appeals erred in presuming that the trial may have disbelieved his affidavits because appellant cannot require (or even request) a trial court to make explicit findings of fact in denying a motion for new trial. He argues that because the State did not offer contradicting affidavits,

---

3. The prosecutor, over appellant's objection, testified very briefly.

4. Tex.R.App. P. 21.8(b) ("In ruling on a motion for new trial, the court must not summarize, discuss, or comment on evidence").

appellant's affidavits should be taken as true and they, therefore, establish his claim to ineffective assistance of counsel and, consequently, his entitlement to a new trial. We disagree.

We address appellant's second ground, concerning the appropriate appellate standard of review, before his first ground, concerning appellate court reliance upon implied factual findings, because the standard of review determines the deference due to factual conclusions which may be inferred from the record but which are not express.

**A. The court of appeals correctly applied a deferential standard of review to the trial court's resolution of historical facts based upon affidavit evidence.**

▇▇▇▇ An appellate court reviews a trial court's denial of a motion for new trial under the "abuse of discretion" standard.[5] We do not substitute our judgment for that of the trial court, but rather we decide whether the trial court's decision was arbitrary or unreasonable.[6] We must view the evidence in the light most favorable to the trial court's ruling and presume that all reasonable factual findings that could have been made against the losing party were

made against that losing party.[7] Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling.

Appellant argues that his affidavits were "uncontradicted" by any evidence offered by the State. Therefore, they establish that his trial counsel advised appellant to plead guilty because he assumed that appellant's written statement was admissible; thus, he did not conduct any independent investigation concerning its voluntariness.[8] Appellant asserts that this Court's decision in *Manzi v. State*[9]—in which we held that a deferential review applies to a trial court's determination of historical facts even when that determination is based solely on affidavits-is inapplicable because *Manzi* involved conflicting affidavits, but in this case the only affidavits submitted were those by the defense and they contained only "uncontradicted" facts.

Both the State and appellant spend considerable time debating whether there are contradictions in or conflicts between the six different affidavits.[10] Regardless of whether appellant's various affidavits overtly conflict or contain internal inconsistencies, the fact remains that they do

---

5. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex.Crim. App.1995).

6. *Id.*

7. *See, e.g., Quinn v. State*, 958 S.W.2d 395, 402 (Tex.Crim.App.1997) (in reviewing denial of motion for new trial, appellate court must "view the evidence in the light most favorable to the trial court's findings (or ruling, if there are no pertinent findings)"); *Loserth v. State*, 963 S.W.2d 770, 774 (Tex.Crim.App.1998) ("[w]hen the trial court does not make express findings of historical facts, the facts are viewed in a light favorable to the court's ruling"); *Beck v. State*, 573 S.W.2d 786, 791 (Tex.Crim.App.1978) (noting that, at a motion for new trial hearing, the trial judge has "the right to accept or reject any part of" a witness's testimony).

8. In the court of appeals, appellant argued that his statement was involuntary because of "his intoxication, fatigue, youth and intellect, promises by the police, and various 'other factors.'" *Charles*, slip op. at 7.

9. 88 S.W.3d 240, 244 (Tex.Crim.App.2002).

10. For example, the State notes that trial counsel's affidavit states that he failed to object to an incorrect parole law charge in the jury instructions. In fact, however, the charge was correct. Appellant's current counsel states that he drafted trial counsel's affidavit and this factual mistake was an "inadvertent error" and an "oversight" on his part. Nonetheless, that kind of factual error in a sworn statement might not inspire confidence in the accuracy of other factual state-

contain numerous ambiguities, vague references, and conclusory statements.[11] This is an inherent problem with appellant's affidavits—with witnesses on the witness stand, such ambiguities may be cleared up by follow-up questions, pressing

ments contained in affidavits composed by one person and signed by another. The State also points to the magistrate's typed affidavit, which she modified by hand before signing so that it was clear that she did not ask whether appellant was intoxicated because her "personal observations of appellant" did not prompt her to do so. From this handwritten modification, the trial court could reasonably infer that the magistrate thought appellant was not mentally or physically impaired, and thus she felt no need to inquire specifically about intoxication.

**11.** For example, appellant's mother's affidavit states that she asked trial counsel if there were any way to suppress appellant's confession. Trial counsel told her that he knew the magistrate, "and that if she was satisfied that Maurice knew what he was doing, there was no way to even try to suppress his written statement." This may or may not be ultimately correct legal advice, depending upon the underlying circumstances and the context of the entire conversation. Trial counsel's affidavit states that he "spoke briefly to Maurice about the facts and circumstances that surrounded his arrest. I spoke to him briefly about the statutory warnings given to him by the magistrate, and the written statement he ultimately gave." How briefly? What, exactly, did appellant tell his attorney during this conversation? Did he say anything that would have, should have, put a reasonable attorney on notice to inquire further? Without greater specificity, these affidavit statements raise more factual issues than they resolve.

Appellant's father's affidavit states that he was present with his son when the magistrate warned Maurice. He asserts that "I remember that Maurice did not look or act like his usual self that night and I believe that he was high from something, probably marihuana." In a live hearing, both sides could develop testimony explaining whether, as he was right there and suspected such a thing, Mr. Charles asked his son about his physical or mental condition or mentioned it to magistrate. And if not, why not.

Appellant's affidavit states "we smoked a lot of marijuana. As a result, I was very, very high from the late afternoon until I woke up the following morning in juvenile detention."

Appellant was sufficiently aware to remember and set out in his affidavit the exact words used by detaining police officers: "You know what you did and you're in a lot of trouble," but he did not remember or understand what the magistrate was telling him about legal rights. In a live hearing this discrepancy could be explored and appellant could explain why he did not ask his father, who was standing beside him, for assistance or tell him "I don't understand." Appellant states, in his affidavit, that when the police officers started questioning him, he began "mumbling because I was tired, they gave me a pen and some paper and told me just to write down what happened." He did so. Appellant's penmanship in the written statement appears to be good, his spelling is reasonably accurate, he writes in grammatical sentences, uses punctuation, gives a very coherent recitation of the events, and makes appropriate corrections with his initials beside them. Based upon the face of the handwritten document itself, a factfinder could reasonably reject the conclusion that it was drafted by a person who was then intoxicated and not fully in command of mental and physical faculties. But these are ambiguities that could be best resolved by direct-and cross-examination.

Appellant's affidavit states that: "I never saw the first page of the judge's warnings that said what it was that I was being charged with." But the magistrate's signed written warning explicitly states: "Maurice Charles, you have been accused of the offense of Aggravated Robbery and Aggravated Kidnapping, alleged to have been committed in Harris County, Texas, on the 5th day of October, 2000, on a complaint made by Sergeant Andrew Carter." And the document then goes on to recite the required warnings. The motion for new trial affidavit prepared for the magistrate's signature contained the sentence, "I did not ask Maurice whether he understood the nature of the offenses with which he was charged." This sentence was crossed out. Does this deletion mean that the magistrate did indeed warn appellant about the nature of the offenses or merely that she did not recall one way or the other? This, too, is a factual ambiguity or conflict that could be resolved by live testimony and further questions.

for the factual basis of a conclusion, and by cross-examination.

Affidavits like those submitted by appellant are widely and appropriately used in criminal and civil proceedings to determine if there are material disputed facts and to define exactly which facts are disputed.[12] They are not always well-suited for resolving disputed facts.[13] This is especially a problem when only one party is in possession of most of the salient facts.

■ With claims of ineffective assistance of counsel like appellant's, the persons with the most, if not exclusive, knowledge of the salient historical facts will normally be the defendant and his former attorney. By the time an ineffective-assistance claim reaches the courtroom, the attorney and his former client may have conflicting memories and positions, but sometimes they are aligned. In the latter situation, it is particularly important that those memories and positions are tested in the crucible of cross-examination. The Texas Rules of Civil Procedure state that affidavits from an interested party may establish a fact for summary-judgment purposes only if that evidence is "clear, positive and direct, otherwise credible, and free from contradictions and inconsistencies, and could have been readily controverted."[14] The phrase "could have been readily controverted" means "the testimony at issue is of a nature which can be effectively countered by opposing evidence."[15] Statements in affidavits of interested witnesses concerning their own state of mind are "uncontrovertible" because "the mental workings of an individual's mind are matters about which adversaries have no knowledge or ready means of confirming or controverting."[16] A trial judge has discretion to discount factual assertions in an affidavit by an interested party that do not meet this test. And an appellate court, in its review, must defer to the trial court's ruling to the extent that any reasonable view of the record evidence will support that ruling.

■ Thus, we agree with the court of appeals that, in the context of the denial of a motion for new trial, "[a] deferential rather than de novo standard applies to our review of a trial court's determination of historical facts when that determination is based, as here, solely upon affidavits"[17] regardless of whether the affidavits are controverted. We overrule appellant's second ground for review.

**B. The court of appeals did not err in relying upon implied factual findings to uphold the trial court's denial of appellant's motion for new trial.**

Appellant also disagrees that the court of appeals is entitled to distill implied fac-

---

This is not to say that the trial judge could not have credited all the factual assertions in appellant's affidavits, only that he would be acting within his discretion if he did not do so.

12. *See Manzi*, 88 S.W.3d at 250 (Cochran, J., concurring).

13. *Id.*

14. Tex R. Civ. Proc. 166a(c) (setting out standard for summary judgment proof based on "uncontroverted testimonial evidence of an interested witness").

15. *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989).

16. *Lection v. Dyll*, 65 S.W.3d 696, 701 (Tex. App.-Dallas 2001, pet. ref'd) (collecting cases). However, if the affidavits of interested witnesses are sufficiently detailed and specific, those affidavits may be objective proof sufficient to establish the affiant's state of mind as a matter of law. *See Channel 4, KGBT v. Briggs*, 759 S.W.2d 939, 942 (Tex. 1988).

17. *Charles*, slip op. at 4.

tual findings from his affidavits that would support a denial of his motion for new trial. Appellant complains that Rule 21.8(b) of the Texas Rules of Appellate Procedure precludes him from rebutting the court of appeals' "presumption" that the trial court made implicit fact findings that support its ruling denying his motion for new trial. He is correct in his premise—Rule 21.8(b) does prohibit the trial judge from making any express factual findings in ruling on a motion for new trial—but wrong in his conclusion that the court of appeal erred in relying upon implicit factual findings to uphold the trial court's ruling.

 In Texas, the trial judge is explicitly prohibited by Rule 21.8(b) from making any comment on the evidence in ruling on a motion for new trial. This prohibition has been a part of Texas statutory law since at least 1880.[18] Thus, appellate courts must defer to any reasonable implied factual findings that the trial court might have made in denying a motion for new trial.[19]

18. *See Rains v. State*, 7 Tex.App. 588, 590 (1880) (noting that then article 782 of the Code of Criminal Procedure stated that "in granting or refusing a new trial the judge shall not sum up, discuss, or comment upon the evidence in the case, but shall simply grant or refuse the motion without prejudice to either the State or the defendant"). The prohibition against judicial comments on the evidence was enacted in most of the states "in the course of a popular political movement sweeping through the nation" during the early 1800's. 9 JOHN WIGMORE, WIGMORE ON EVIDENCE § 2552 at 665–66 (Chadbourn rev. 1981). Under the early Populist view, judges were required to be neutral referees, allowed only to set out the content of the law, never to express an opinion on the facts. This bar applied not only to any comment *to* the jury or *in front of* the jury, but frequently even in non-jury proceedings, such as a hearing on a motion for new trial. Texas is among the many states which have maintained these "no comment on the evidence" statutes or rules regardless of current wisdom or context.

19. Appellant cites to the concurring opinion in *State v. Ross*, 32 S.W.3d 853, 859 (Tex. Crim.App.2000), in which Judge Womack stated:

There is no more reason to assume that the trial court made implicit findings of fact that support its ruling than there is to believe that the trial court made implicit conclusions of law that support its ruling.

It is just as possible that the resolution of the issues turned on the trial court's understanding of the law. Indeed, it is more likely that the trial court's ruling is one of law when the evidence was uncontradicted. . . .

In a system in which appellate courts make unjustified and incorrect assumptions to uphold rulings, a trial judge who is more concerned about being affirmed than being right has every incentive to make one-word rulings. I hope and believe that such judges are few. But countless errors of law can be hidden behind unexplained rulings if we are willing to assume that judges have rejected uncontroverted testimony, for no apparent reason, without saying so.

*Id.* (Womack, J.). But Judge Womack was speaking in the context of a motion to suppress in which findings of fact, though not statutorily required, are certainly permissible and perhaps advisable. In ruling on a motion for new trial, however, judges are expressly forbidden from commenting on the evidence. Thus, Judge Womack's later statement in *Ross* is more pertinent to this situation:

The simple and correct resolution of this recurring problem is to say that, when the party that is challenging a trial court's ruling fails to request findings of fact, an appellate court will not reverse a ruling that could be reasonably based on adverse findings of fact. If we couple this rule with a rule that the failure to make findings of fact, on request that was timely presented and refused over objection, is an independent ground for reversal of the trial court's judgment, we will have taken a step toward the just resolution of these appeals-a resolution that is based on the reality of what happened rather than on assumptions that may be entirely fictitious.

*Id.* at 859–60 (citations omitted). Because, under Rule 21.8(b), a trial court cannot make findings of fact in denying a motion for new trial, a defendant who wishes to have the trial

In this case, appellant takes great umbrage with the court of appeals' "presumption" that the trial court simply may not have believed appellant's affidavits. He quotes from the lower court's opinion:

> Because the only evidence produced by appellant in support of his motion for new trial were affidavits and written records, some of which contained conflicting testimony, the trial court was within its right to disbelieve the assertions upon which appellant's claims of ineffective assistance of counsel are based. This is particularly true if a witness chooses not to testify live at the motion for new trial hearing. Indeed a witness' unwillingness to support an affidavit with live testimony could itself be considered evidence that the affidavit is untrue. In this case, not a single affiant testified on behalf of appellant.[20]

The court of appeals cited and relied upon this Court's reasoning in *Kober v. State*,[21] in which we stated that "a witness' unwillingness to support an affidavit with live testimony could itself be considered evidence that the affidavit is untrue."[22]

Appellant contends that the court of appeals' reasoning is premised on a clear factual error: he states that the trial court ordered that the hearing be conducted by affidavits and implies that he was prevented from presenting live testimony by the trial judge's policy "and the policy of virtually every criminal district judge in Harris County." That is not, however, what the present record reflects. It was appellant, not the trial judge, who expressly requested a hearing by affidavits in his "Order Presenting Motion for New Trial."[23] Appellant wrote the order; the trial judge simply signed it.[24] Furthermore, at the hearing on the motion for new trial, appellant did not offer any live witnesses or testimony. He did not object to proceeding on affidavits. Having received precisely what he requested, appellant is estopped from complaining that the court of appeals "presumed" that the trial court could have disbelieved appellant's affidavits because he was unwilling to have their testimony

---

court explicitly set out his findings concerning the historical facts pertinent to his ineffective assistance of counsel claim, should raise that claim in a habeas corpus proceeding. Otherwise, an appellate court will not reverse a trial court's denial of a motion for new trial "that could be reasonably based on adverse findings of fact." *Id.*

**20.** *Charles*, slip op. at 7–8 (citations omitted).

**21.** 988 S.W.2d 230 (Tex.Crim.App.1999).

**22.** *Id.* at 234. In *Kober*, unlike the present case, the affiant did appear at the motion for new trial hearing, but expressly invoked her right against self-incrimination and refused to testify. *Id.* at 231. Here, appellant expressly requested that the hearing be conducted by affidavit and did not offer to call the witnesses or object to a hearing by affidavit. The same logical inference may flow from any of several scenarios—an express refusal to testify, a request that witnesses not testify, or a failure to produce them. *See Albiar v. State*, 739

S.W.2d 360, 363 (Tex.Crim.App.1987) (factfinder may infer from a party's failure to call an available, competent and material witness that the witness's testimony would be unfavorable); *Torres v. State*, 552 S.W.2d 821, 825 (Tex.Crim.App.1977) (same).

**23.** The "Order Presenting Motion for New Trial" submitted for the judge's signature is numbered page 16 of Appellant's motion, is typed in the same distinctive typeface as used in appellant's motion, and is sandwiched between appellant's Certificate of Service and one of his affidavits.

**24.** Appellant argues that if it were not the trial court's policy, "why didn't the trial judge scratch out that portion of the order that required the hearing be conducted on affidavits?" But why should he? If this was the type of hearing that appellant explicitly wanted—and a hearing on a motion for new trial by affidavits is expressly permitted by TEX.R.APP. P. 21.7—why should the trial judge deny him that request?

tested in the crucible of cross-examination.[25]

He who asks for a hearing by affidavit rather than by live testimony has a hard row to hoe in establishing that a trial judge abused his discretion in failing to credit conclusory assertions contained in his affidavits. And he who composes the affidavits must ensure that they contain sufficient specific concrete facts that are free from any ambiguity, uncertainty, or inconsistency as to clearly establish entitlement to relief. Of course, the trial judge is not required to believe those factual statements, even when they are uncontradicted by other affidavits.[26] Just as a jury may "believe all, some, or none of the testimony,"[27] so may a trial judge believe all, some, or none of an affidavit, even though it may be difficult (if not impossible) to assess an affiant's credibility solely from the cold, hard page.

▆▆▆ We hold that, because the trial judge is prohibited from commenting on the evidence in ruling on a motion for new trial, reviewing courts may impute implicit factual findings that support the trial judge's ultimate ruling on that motion when such implicit factual findings are both reasonable and supported in the record. We uphold the court of appeals' method of analysis and its implicit factual findings in this case. Here, the trial judge could have reasonably disbelieved some or all of the affiants' statements, found them inconclusive, contradictory, internally inconsistent, or ambiguous. Or, as stated by the court of appeals, the trial judge may have viewed the affidavits with skepticism

because they were not supported by any offer of live testimony.

We therefore overrule appellant's first ground for review and affirm the judgment of the court of appeals.

KELLER, P.J., KEASLER and HERVEY, JJ., concurred in the result.

---

**25.** *See Prystash v. State,* 3 S.W.3d 522, 531 (Tex.Crim.App.1999) ("the law of invited error estops a party from making an appellate error of an action it induced"); *Benson v. State,* 496 S.W.2d 68, 70 (Tex.Crim.App.1973) (stating that "[a]ppellant cannot now be heard to complain because the court granted him what he asked for").

**26.** *See State v. Ross,* 32 S.W.3d at 855 (stating that a trial judge may disbelieve even uncontradicted testimony).

**27.** *Chambers v. State,* 805 S.W.2d 459, 461 (Tex.Crim.App.1991).