Affirmed and Memorandum Opinion filed January 9, 2007








Affirmed and Memorandum Opinion filed January 9, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NOS. 14-05-00428-CR 

         14-05-00429-CR

____________

 

TODD J. COLSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 182nd
District Court

Harris County, Texas

Trial Court Cause Nos. 974,352
& 974,355

 



 

M E M O R A N D U M   O P I N I O N

A jury convicted appellant Todd Colson of two instances of
official oppression and the trial court assessed punishment for each offense at
sixty days= confinement in the Harris County Jail.  In three
issues, Colson challenges the effectiveness of his counsel at the
guilt/innocence and punishment phases of trial and contends the trial court
erred by not correcting Colson=s mistaken belief that accepting
responsibility during the punishment phase would jeopardize his appeal.  We
affirm.








I.  Factual and Procedural
History

At about 2:00 p.m.
on October 4, 2003, a Ashank@, or sharpened
piece of metal, was found during a random search of cell block E-4 of the
Harris County jail facility commonly referred to as ALittle Baker.@  Deputy Todd J.
Colson participated in the investigation related to this discovery, and was
subsequently charged with official oppression for the conduct described below.

After the shank
was discovered, the inmates of cell block E-4 were questioned, but revealed no
information.  They were subsequently ordered to line up facing the walls of the
lower floor of the cell block and to strip.  Body searches were conducted,
which required the inmates to raise their feet, squat down, and rub their
fingers through their hair.  Inmate Kehinde George later testified that during
this search, Colson kicked him on the ankle causing George to fall.  According
to George, Colson then dragged him to the center of the room and taunted him
before striking him on the head.  Detention Officer Courtney Atkinson and
inmate Rodney Kibble also witnessed the blow.  Atkinson testified that Colson Aslapped@ George, and
Kibble testified that Colson Abackhanded@ George.

Kibble purportedly
failed to keep his hands behind his back during the search as instructed. 
After Colson pointed this out to lower-ranking detention officers[1]
who took no action, Colson kicked Kibble in the lower back.  Kibble lost his
balance, but stopped himself from falling by catching himself against a cell
block wall.








Colson next told
Detention Officer Courtney Atkinson to accompany him to the upper level of the
cell block.  Inmates were sent to the upper level individually and ordered to
empty their lockers.  One inmate, Luscious Hunt, had dominoes in his locker
that belonged to the county, and were therefore considered contraband.  Colson
called Detention Officer DeLuna[2]
to come upstairs and Colson asked Hunt whether he would rather be hit or
written up.  Hunt testified that he chose to be written up, but according to
the testimony of both Hunt and Atkinson, DeLuna and Colson punched Hunt in the
chest and back until he fell to the floor.  Atkinson further testified that
Colson and DeLuna wrapped strips of toweling around their hands before striking
Hunt to avoid leaving fingerprints or Aknuckle prints.@  Hunt was then
told to return to the lower level.

At some point,
inmate Joe Lewis was sent upstairs.  After Colson stated that Lewis had an
attitude problem, Lewis made a sucking noise with his teeth, and Colson punched
Lewis in the jaw.  Lewis remained standing and facing Colson, who taunted him
and punched him in the jaw a second time, knocking him to the floor.  Lewis was
then instructed to return to the lower level of the cell block.  Inmate Anthony
Ramos also testified that after he was brought upstairs, Colson punched him
twice in the lower chest or upper stomach. 

Atkinson was not
scheduled to work for a few days after these events, but when he returned to
work, Colson told him, AYou don=t know nothing,
you didn=t see anything.@ Colson gave
Atkinson a piece of paper with instructions for him to Aplead the Fifth
[Amendment].@[3]  Atkinson further
testified that Colson approached him again a few days later and told him Ayou don=t know nothing,
you didn=t see anything.@ 

Following an
internal investigation, Colson=s employment was terminated in late
November 2003.  In January 2004, Colson was indicted for official oppression
regarding his treatment of inmates George, Hunt, Lewis, and Ramos.  The case
was tried to a jury in February 2005 and Colson testified at the punishment
phase only.  Colson was found guilty with respect to Hunt and Lewis and elected
to have the trial court assess his punishment.

When Colson
testified at the punishment phase of his trial, the following exchange took place:








Trial Court:   Let me
change topics and ask you a question.  I am concerned from the 

          comments in
the presentence report about your position.  Do you accept 

          the jury=s verdict?

Colson:        Ma=am I respect their verdict

Trial Court:   Do you
take responsibility for the incidents that you=ve been convicted of?

Colson:        I
invoke my Fifth Amendment right on that.

Trial Court:   You
don=t have a Fifth Amendment
privilege.  You=re on the witness stand.

Colson:        I plan
to appeal the decision.  I know I was doing my job, your Honor.

Trial Court:   So, do
you take responsibility for assaulting those two inmates?

Colson:        I
never assaulted any inmates, your Honor.

Trial Court:   Do you
take responsibility for assaulting those two inmates B yes or no?

Colson:        No, ma=am.  I do not take responsibility
for something I didn=t do.

Trial Court:   Okay. 
You can step down.

 

The trial court
assessed punishment for each offense at sixty days= confinement in
the Harris County Jail.  Colson filed a motion for new trial that was heard on
affidavits and without live testimony.  In his motion, Colson argued that he
did not receive effective assistance of counsel because his attorney, Rhonda
Wills, did not honor his desire to testify at the guilt/innocence stage of
trial.  In support of this contention, Colson attached a page of handwritten
notes he and Wills had written during the trial.  In his affidavit, Colson
claimed the content of the notes show that he wanted to testify at the
guilt/innocence stage of his trial but Wills refused to call him.  Colson also
submitted affidavits from his sister and his girlfriend, each of whom attested
that she heard Wills say she Adidn=t let@ Colson testify
during the guilt/innocence phase of trial.  In contrast, Wills stated in her
affidavit that she asked Colson in writing if he wanted her to call him to
testify, and he responded by whispering Aif you think so.@  According to
Wills, her handwritten note, AI=m NOT going
to call you@ was written in response to his comment.  The trial
court denied Colson=s motion for new trial, and this appeal
ensued. 

II.  Issues Presented

In his first
issue, Colson contends his trial counsel was ineffective because she did not 








allow him to
testify at the guilt/innocence stage of his trial.  In his second issue, Colson
contends the trial court judge should have corrected his mistaken understanding
of the effect that accepting responsibility for the crimes would have had on
his planned appeal.  In his third issue, Colson contends his trial counsel was
ineffective for not correcting this mistaken understanding. 

 III.  Standard of Review

Ineffective
assistance of counsel is reviewed under the standard set forth in Strickland
v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). 
Under Strickland, an appellant must prove by a preponderance of
the evidence that counsel=s representation fell below the objective
standard of prevailing professional norms, and there is a reasonable
probability that, but for counsel=s deficiency, the
result of the proceeding would have been different.  Id. at 687, 104 S.
Ct. at 2064.  An appellant=s failure to satisfy one prong makes it
unnecessary for a court to consider the other prong.  Id. at 697, 104 S.
Ct. at 2069.

Claims of
ineffective assistance of counsel are commonly raised in a motion for new
trial, as occurred in this case.  In these circumstances, we analyze the
appellant=s ineffective assistance of counsel issue as a
challenge to the denial of his motion for new trial.  Charles v. State,
146 S.W.3d 204, 208 (Tex. Crim. App. 2004).  We apply a deferential rather than
de novo standard of review of a trial court=s determination of
historical facts when that determination is based, as here, solely upon
affidavits.  Id. at 210.  Thus, Aappellate courts
must defer to any reasonable implied factual findings that the trial court
might have made in denying a motion for new trial.@  Id. at
211.  This standard applies regardless of whether the affidavits are
controverted.  Id. at 210.








IV.  Analysis

A.      Trial Court Did Not Abuse Its Discretion by Denying Colson=s Motion for New
Trial 

Both on appeal and
in his motion for new trial, Colson argues that his trial counsel was
ineffective because she refused to call him as a witness.  According to Colson,
her actions prevented him from testifying about the threats he perceived from
the inmates he struck.  In support of his motion for new trial, Colson
presented his own affidavit in which he testified that Wills asked him during
the guilt/innocence phase of trial whether he wanted to testify, and that he
responded by writing AI have no choice.@  However, Wills
stated in her affidavit that Colson chose to follow her advice during the
guilt/innocence phase of trial and refrain from testifying.  Specifically,
Wills stated:

At all times
Defendant understood that he had the right to testify at his trial and that the
exercise of that right was his decision.  I discussed this specific issue with
Defendant on various occasions.  Moreover, Defendant was a deputy sheriff and
he told me many times that he had received training regarding a defendant=s constitutional
rights in a criminal matter as part of his training as an officer.  I abided by
Defendant=s decision at all times to exercise his right to
testify.  I advised Defendant against testifying during the trial of this
matter both during the guilt/innocence phase, as well as the sentencing phase. 
Mr. Colson followed my advice and chose to not testify during the
guilt/innocence phase, but decided against following my advice and testified
during the sentencing phase.

Although the
affidavits of Colson=s sister and his girlfriend include
statements that each heard Wills say she didn=t Alet@ Colson testify at
the guilt/innocence phase of trial, Wills stated that she A[did] not recall@ telling either
that she Adidn=t let [Colson] testify at his trial@.  Additionally,
Wills explained the majority of the handwritten notes in a manner consistent
with her position that she honored Colson=s wishes.[4]








Reviewing these
facts under the applicable standard, we conclude that Wills=s affidavit
provided a reasonable basis for the trial court=s ruling.[5] 
Moreover, any allegation of ineffectiveness must be firmly founded in the
record, which must affirmatively demonstrate the alleged ineffectiveness.  McFarland
v. State, 928 S.W.2d 482, 500 (Tex. Crim. App.1996) (en banc), cert.
denied, 519 U.S. 1119, 117 S. Ct. 966, 136 L. Ed. 2d 851 (1997), overruled
on other grounds, Mosley v. State, 983 S.W.2d 249 (Tex. Crim. App.
1998) (en banc), cert. denied, 526 U.S. 1070, 119 S. Ct. 1466, 143 L.
Ed. 2d 550 (1999).  On the record before us, we cannot conclude the trial court
abused its discretion by denying Colson=s motion for new
trial.  Accordingly, we overrule Colson=s first issue.

B.      Trial Court Had No Duty to
Correct Colson=s Alleged Misunderstanding of the
Law

Colson elected to
testify during the punishment phase of trial.  During his testimony, the trial
court asked, Ado you take responsibility for assaulting those two
inmates?@  In response,
Colson first attempted to invoke his Fifth Amendment privilege against
self-incrimination.  After the trial court informed him that the privilege did
not apply, Colson stated, AI plan to appeal the decision.  I know I
was doing my job, your Honor.@  When again asked whether he accepted
responsibility, Colson replied AI never assaulted any inmates, your Honor.@  After the trial
court asked the question a third time and pressed Colson for a Ayes or no@ answer, and
Colson replied, ANo, ma=am.  I do not take
responsibility for something I didn=t do.@  








On appeal, Colson=s counsel contends
that A[i]t appears that
the appellant believed he would be jeopardizing his appeal if he accepted
responsibility.  Actually that was not the case, but the trial court did not
correct [Colson=s] incorrect impression.@  He argues that
the trial court Aor even the prosecutor should have
corrected [Colson=s] legal mistake when his own attorney was
failing to do so.@  We disagree with both the premise and
the conclusion.

First, Colson
argues that his testimony was the result of his misunderstanding that he would
jeopardize his appeal by accepting responsibility for the acts for which he was
convicted.[6] 
This argument is not supported by the record, but is based on the inference
that Colson=s statement, AI plan to appeal
the decision@ is the motive for his refusal to accept
responsibility.  However, Colson later gave a more direct statement of why he
refused to take responsibility when he said, AI do not take
responsibility for something I didn=t do.@ (emphasis
added).  The argument that Colson would have testified differently if he had
known that he would not waive an unspecified error by accepting responsibility
is mere speculation.  

We further
disagree with Colson=s conclusion that if his testimony was
motivated by an unexpressed misunderstanding of the law, the trial court or the
prosecutor had a duty to correct this misunderstanding.  However, as Colson has
cited no authority in support of this proposition, this argument is waived.  Tex. R. App. P. 38.1(h).

C.      Counsel Was Not Ineffective at the
Punishment Phase of Trial








In his third
issue, Colson contends his trial counsel was ineffective at the punishment
phase of trial because she did not correct his allegedly incorrect
understanding of the law described above.  Unlike Colson=s first issue,
this argument was not raised in a motion for new trial.  Accordingly, no
evidence was developed in the trial court on this issue.

Confronted with a
silent record, we must begin with the strong presumption that counsel=s actions were
motivated by sound trial strategy, and we will not conclude the action was
deficient unless it was so outrageous that no competent attorney would have
engaged in such conduct.  Garcia v. State, 57 S.W.3d 436, 440 (Tex.
Crim. App. 2001), cert. denied, 537 U.S. 1195, 123 S. Ct. 1351, 154 L.
Ed. 2d 1030 (2003).  Here, we cannot agree that the failure of Colson=s trial counsel to
interrupt her client=s testimony and correct his unexpressed
misunderstanding of the law was Aoutrageous.@  First, as
previously discussed, we do not agree that this alleged misunderstanding was
apparent or should have been inferred by those who heard Colson=s testimony.  In
addition, Wills had already advised Colson not to testify, and he chose to
disregard her counsel.  The record does not disclose the reasons for her advice
or his decision; thus, we cannot say that he had not been appropriately 
advised prior to testifying.  Moreover, even if Wills inferred that Colson=s failure to
accept responsibility was a misguided attempt to preserve error and attempted
to intervene, the trial court was not obligated to interrupt Colson=s testimony to
permit Wills to again advise her client.  Even if permitted, it is perhaps
equally likely that such an interruption and revision of Colson=s former testimony
would seem less than credible.  In sum, there is no basis on which to conclude
that Wills=s failure to interrupt Colson=s testimony was
erroneous or inconsistent with a sound trial strategy. 

We overrule Colson=s third issue.   

V. Conclusion








We hold  the trial
court did not abuse its discretion in overruling Colson=s motion for new
trial.   We further hold that the trial court did not err by failing to advise
Colson, sua sponte, that he could accept responsibility for his actions at the
punishment phase of trial without waiving alleged errors in the guilt/innocence
phase.  Lastly, we hold that Colson has failed to demonstrate  he was denied
effective assistance of counsel.  Accordingly, we affirm the judgment of the
trial court.         

 

 

/s/      Eva
M. Guzman

Justice

 

Judgment rendered
and Memorandum Opinion filed January 9, 2007.

Panel consists of
Justices Anderson, Hudson, and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  The cell block is staffed by, inter alia, sergeants,
deputies, and jailers or detention officers.  According to testimony presented
at trial, deputies receive at least four months of training, and jailers or
detention officers receive approximately three weeks of training. 





[2]  No first name is stated in the record.





[3]  Atkinson testified that he produced the paper during
the internal investigation.  





[4]  In explaining the handwritten note that reads, AI have no [undecipherable],@ Wills stated only that A[t]his appears to be a note in Defendant=s handwriting but I cannot decipher the last word.@  The appellant contends that the last word is Achoice.@ 
The remaining notes were explained as discussions about the evidence, or as
notes that were supplemented by their whispered conversations.





[5]  In his brief, Colson contends the trial court should
have granted him a Alive@ hearing on his
motion for new trial so he could cross-examine his trial counsel.  However, the
Court of Criminal Appeals recently considered and rejected Aa per se rule that a trial court must hear live
testimony whenever there is a factual dispute in affidavits and a party asks
for testimony.@  Holden v. State, 201 S.W.3d 761, 764
(Tex. Crim. App. 2006).  





[6]  Specifically, Colson asserts on appeal that he
thought he would waive errors that occurred in the guilt/innocence phase of
trial by accepting responsibility in the punishment phase, as described in DeGarmo
v. State, 691 S.W.2d 657 (Tex. Crim. App. 1985) (en banc), cert. denied,
474 U.S. 973, 106 S. Ct. 337, 88 L. Ed. 2d 322 (1985).  Colson argues that he
didn=t realize that DeGarmo had been overruled by Leday
v. State, 983 S.W.2d 713 (Tex. Crim. App. 1998) (en banc) (abrogating DeGarmo
in holding that an appellant=s admission of
guilt in the punishment phase does not waive such claims of trial error as
insufficient evidence; illegal search or seizure; failure to find proof beyond
a reasonable doubt; certain violations of a defendant=s Fourth, Fifth, and Fourteenth Amendment rights;
improper admission of privileged evidence; statements improperly obtained
during custodial interrogation; admission of uncorroborated testimony of an
accomplice or of an adult victim of a sexual offense who did not make an outcry
within a year; and questions propounded to witnesses by jurors).  Colson does
not allege that any of the errors enumerated in Leday occurred in the
present case.