**Opinion filed August 31, 2011**



## In The

# Eleventh Court of Appeals

_____

### Nos. 11-10-00117-CR & 11-10-00118-CR

_____

### DENISE CAROLYN WILLIAMS, Appellant

### V.

### STATE OF TEXAS, Appellee

**On Appeal from the 32nd District Court**

**Nolan County, Texas**

**Trial Court Cause Nos. 10758 & 10843**

### MEMORANDUM OPINION

Denise Carolyn Williams appeals her convictions for possession of cocaine with intent to deliver, in one case, an amount more than four grams but less than 200 grams and, in the other case, an amount more than one gram but less than four grams. Following her open plea of guilty to the court in both cases, the trial court assessed her punishment at forty years confinement in the Texas Department of Criminal Justice, Institutional Division, in the case involving the greater amount of cocaine and at fifteen years confinement in the other case, with the sentences to be served concurrently. In a single issue applying to both cases individually, Williams

contends that the trial court abused its discretion in overruling her motion for new trial. We affirm.

A claim of ineffective assistance of counsel may be raised in a motion for new trial. *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009). A denial of a motion for new trial is reviewed under an "abuse of discretion" standard. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004).

To prevail on a claim of ineffective assistance of counsel, the defendant must prove that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). In order to establish the first prong of *Strickland*, the defendant must prove by a preponderance of the evidence that trial counsel's representation fell below professional standards. *Willliams v. State*, 313 S.W.3d 393, 400 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

Either party may suggest by motion, or the trial court may suggest on its own motion, that the defendant may be incompetent to stand trial. TEX. CODE CRIM. PROC. ANN. art. 46B.004 (Vernon 2006). On suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial. *Id.* If a trial court has a bona fide doubt about the competency of the defendant, he or she shall conduct an informal inquiry to determine if there is evidence that would support a finding of incompetence. A bona fide doubt may exist if the defendant exhibits truly bizarre behavior or has a recent history of severe mental illness or at least moderate mental retardation. *Montoya v. State*, 291 S.W.3d 420, 425 (Tex. Crim. App. 2009).

At a bond hearing on August 4, 2009, after Williams's arrest but before she entered her plea, a hearing was had with respect to whether her bond should be raised. Nothing in Williams's testimony at that hearing would have been such as to give any notice to her counsel that she required a competency hearing. She appeared to fully understand what the hearing was about and answered questions coherently as posed by the State and by her counsel.

Williams entered her plea on January 22, 2010. Throughout the admonishments and her own testimony, she was coherent and appeared to understand the proceedings. There is nothing she said or did during that proceeding that would have given rise to a question about her competence to stand trial.

Williams was sentenced at a hearing held on February 8, 2010. During her testimony at that hearing, Williams was coherent and said or did nothing that would have given rise to a question about her competence to stand trial.

At the hearing on her motion for new trial, Williams testified that her highest grade of education was third grade because she had been hit by a truck. She indicated she could not read or write. She said her lawyer never asked her about any mental issue or handicap and that she did not tell him about any for that reason. She indicated that he never had her seen by any mental health professional. She asserted that she entered an open plea because her lawyer thought it was a good thing to do. She stated that she did not know what a presentence investigation report was. She testified that she told the probation officer she had been to an MHMR facility.

Williams testified that she did not know if she had received an offer for twenty years. She said she had not understood the plea admonishments and had answered that she did because her attorney had told her to say, "Yes." She acknowledged that she had not raised any competency issue with the court, such as having been treated by MHMR, but indicated that she did not know that she could. She indicated that she could not remember several past court appearances.

Samuel Dellus Darnall, Williams's trial attorney, testified that he had an undergraduate degree in psychology and that, between undergraduate school and law school, he had worked as a drug and alcohol counselor at the Abilene Regional Council on Alcohol and Drug Abuse. He related that he was subsequently employed by MHMR as a counselor in its substance abuse facility. He said that his employment with MHMR entailed screening and diagnosis of clients, including some who had both substance abuse and mental health issues. He indicated that he had the education, training, and experience to make assessments of people as to whether they had mental deficiencies, as well as drug and alcohol dependency.

Darnall testified that Williams was able to articulate to him her arrest in 2007, the events that transpired, her interaction with the officers, and her understanding of the case. He said her

understanding of what happened was very similar to the police report. He said that her memory of a 2008 undercover buy was less specific but that she remembered such facts as coming back from Houston, having the drugs, and making them available.

Darnall insisted that Williams understood the range of punishment and the charges against her. He said she remembered the facts of the cases, including some older cases. He stated she had told him she had an eighth grade education, which none of her family members ever disputed. He indicated that, when making payments to him, she showed she understood her family finances and said things that indicated that she was the matriarch of her family.

Darnall indicated that Williams asked appropriate questions during their discussions, asking what the facts were and what the police had. He said she remembered talking to the police and, with respect to arrests in 2007 and 2009, remembered facts that happened in order. He said she could work a complicated cell phone. He noted that she seemed to have an understanding of her life and business. He insisted that he believed she knew the difference between a 35-year offer and a 20-year offer and that she was never offered probation.

On cross-examination, Darnall acknowledged that he had never discussed his client's experience with MHMR with the trial court. He also acknowledged that he was not licensed to diagnose anyone with MHMR issues other than those involving alcohol and drug abuse. He also acknowledged that he did not have a doctorate in psychology.

Darnall said that he knew Williams had difficulty with reading and writing. He testified that she told him that she had gone to MHMR for depression following her mother's death. Darnall acknowledged that he had never contacted the probation department to find out if the department had referred Williams to a professional. He acknowledged that he was aware that the box in the presentence investigation report showing that Williams had a physical, mental, or medical impairment was checked and that the report also showed that a psychological evaluation of the defendant had not been prepared. Darnall also insisted that Williams told him she had not been diagnosed as retarded.

Darnall testified that he did not believe he had ever instructed Williams to follow his lead with respect to answering the trial court's questions. He said that, while he told her she would be asked to answer questions, he did not prepare her answers. Darnall again acknowledged that he had not, during sentencing, brought any potential MHMR issue to the trial court's attention. He

indicated that a potential mental health issue did not always mean a competency hearing was necessary but that it was a matter to be decided on a case-by-case basis.

Darnall clarified that Williams's mental health issue was depression, grief, and anxiety over the death of her mother. He indicated that he had brought that matter before the court at the sentencing hearing. He said he was aware that the disability payment she was receiving was because of her difficulty walking. Darnall denied that he had seen any mental impairment. He noted that, in all of her numerous court appearances over the years, her competency had never been questioned.

Darnall testified that he believed Williams knew the charges against her in both cases and that she was able to assist with the defense. He said she understood the range of punishment, understood that probation was not the same as twenty years in prison, understood that twenty years was less than thirty-five or thirty years in prison, and understood the difference between sentences running concurrently versus those running consecutively.

The trial court noted at the hearing that it had the opportunity to observe Williams in court on numerous occasions and that she functioned at a high rate of capacity and was very much competent.

We hold that Williams failed to show that Darnall's performance fell below an objective standard of reasonableness. Williams referred to Darnall's knowledge of her difficulty reading and writing and his knowledge that her IQ was not normal. Despite any deficiency Williams might have had with reading and writing, the evidence established that such deficiency did not appear to interfere with her ability to know what the facts and issues were in her case or prevent her from working with her attorney in her defense. While Darnall testified that he was not there to testify that Williams had the IQ of a normal person, he did not state whether he thought her IQ was higher or lower than a normal person. In any event, whatever her IQ was, there was nothing to indicate that the level of her intellectual capacity in any way interfered with her understanding of the issues in this case or interfered with her being able to work with her attorney on her defense. We conclude that Darnall did not have facts that would lead the trial court to have a bona fide doubt as to Williams's competency.

Williams also questions Darnall's failure to call a witness or witnesses at the sentencing hearing regarding Williams's psychological issues or her past treatment by MHMR. Darnall testified that he did not do that because of trial strategy involved in trying to get probation.

5

When he began to speak about the strategy, Williams's counsel interrupted him and went on to a different line of questioning. Williams did testify at the hearing that her mother had died in 2008 and that she was lost and depressed after that. Inasmuch as Williams's only psychological issues and treatment by MHMR had to do with depression and anxiety resulting from her mother's death, Darnall might have reasonably thought that it had no relevance to the issue of probation or that it might have had a detrimental effect in his effort to obtain probation. In any event, we are unable to conclude that Darnall's failure to call such witnesses caused his representation to fall below an objective standard of reasonableness. Consequently, we hold that a reasonable view of the record could support the trial court's ruling. Therefore, we hold that the trial court did not abuse its discretion in denying Williams's motion for new trial. We overrule her sole issue in each appeal.

The judgments of the trial court are affirmed.

PER CURIAM

August 31, 2011

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Hill, J.[1]

---

[1]John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.