COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-163-CR

NO. 2-05-164-CR

NO. 2-05-165-CR

MICHAEL JAMES HAIGHT APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Michael James Haight pled guilty on March 1, 2004 to three felonies:  assault–bodily injury of a family member, enhanced with one prior assault against a family member; aggravated assault with a deadly weapon; and arson.  The trial court accepted Appellant’s pleas and placed him on deferred adjudication community supervision for ten years in each case.

About nine months later, in December 2004, the State filed a petition to proceed to adjudication in each case, alleging that Appellant had violated conditions of his community supervision.  On March 15, 2005, the trial court held a hearing on the State’s petitions.  After the State waived its allegation concerning Appellant’s failure to maintain employment, Appellant pled true to each remaining allegation—that he used methamphetamine on three occasions, failed to take a drug test, and failed to attend a drug offender education program (paragraph one); that he failed to pay court costs (paragraph three); and that he failed to pay community supervision fees (paragraph 3B).

After the trial court heard evidence on the issue of punishment, it adjudicated Appellant guilty of each offense and sentenced him to ten years’ confinement for each assault and fifteen years’ confinement for arson, with the sentences to run concurrently.  The trial court denied Appellant’s motions for new trial.

In one point, Appellant contends that the trial court abused its discretion by denying his motions for new trial.  Because we hold that the trial court did not abuse its discretion, we affirm the trial court’s judgments.

We review the denial of a motion for new trial for an abuse of discretion.
(footnote: 2)  We do not substitute our judgment for the trial court’s judgment.
(footnote: 3)  We view the evidence in the light most favorable to the trial court’s ruling and presume that all reasonable findings that could have been made against Appellant were so made.
(footnote: 4)  Only when no reasonable view of the record could support the trial court’s ruling do we conclude that the trial court abused its discretion by denying the motion for new trial.
(footnote: 5)
 As we held in this matter when ordering a hearing on Appellant’s motions for new trial, Appellant’s claims of ineffective assistance at punishment and conflict of interest at punishment are the only claims in his motions for new trial that may properly be raised at this juncture.

In Appellant’s brief, he “stands on the record” regarding his conflict of interest claim.  Because the claim was litigated at the hearing, however, we believe that it is in the interest of all concerned to address it.  In support of his claim of conflict of interest, Appellant’s sworn motions for new trial set out the following allegations.  Trial counsel had represented Appellant’s former wife, the complainant in one of the cases used to enhance his conviction.  Trial counsel informed Appellant that he was representing him in the hearing to proceed to adjudication and punishment only because Appellant’s former wife had asked him to.  When Appellant’s former wife grew angry with Appellant, trial counsel sent him a letter saying that he would no longer represent Appellant because the fee-payment schedule was no longer acceptable.  Later, trial counsel told Appellant that he was only trying to scare him and that he would still represent him.

Evidence at the hearing on the motions for new trial, however, conflicted with Appellant’s sworn motions.  Trial counsel testified that while the ex-wife had been a former client of his, that representation had terminated before he began representing Appellant.  Further, he sent a fee letter demanding payment that was overdue because Appellant had not paid him yet, not because of any alleged conflict between Appellant and his ex-wife.  Trial counsel also testified that he had never dated the ex-wife or been out with her socially and that he was unaware of the alleged conflict between Appellant and his ex-wife until he read Appellant’s motions for new trial.  Finally, the ex-wife wrote a letter on Appellant’s behalf in support of his desire to remain on community supervision, and that letter was admitted at the punishment hearing.  Based on the applicable standard of review, we cannot say that the trial court abused its discretion by denying Appellant’s motions for new trial as to the conflict of interest claim. As to the ineffective assistance claim, in his motions, Appellant specifically contended that trial counsel failed to discuss the punishment hearing until the day before the hearing; did not prepare for the punishment hearing in any way, including failing to discuss testimony with Appellant or his wife, who was called as a witness; failed to make timely, proper objections at punishment; and failed to offer mitigating evidence.  To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that his counsel’s representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel’s deficiency, the result of the trial would have been different.
(footnote: 6)
 Appellant’s testimony at the hearing on his motions for new trial, and that of his current wife, mirrored his allegations in the sworn motions.  But, regarding the preparation for the punishment hearing, trial counsel testified that he had at least two face-to-face meetings with Appellant and several telephone conversations, including one that lasted forty-five minutes to an hour.  He testified that the initial meeting lasted about two hours.  Another meeting lasted about ninety minutes.  Trial counsel testified that the State made a firm offer in January 2005, which Appellant rejected, and that he and Appellant then specifically went over

the need to have Appellant testify, especially about his state of mind and how he had learned from his past experiences,

evidence concerning Appellant’s failure to obtain gainful employment because of medical issues,

Appellant’s methamphetamine use and positive drug test, and

Appellant’s failure to pay fines because of his lack of employment.

Trial counsel also testified that he reviewed medical documents that Appellant provided, but they were receipts, billing statements, and pamphlets describing medical conditions, not substantive medical reports.

Regarding preparing Appellant’s wife to testify, trial counsel offered no evidence, but Appellant’s wife testified on cross-examination in the hearing that she testified at the punishment hearing to being pregnant, to the detrimental effect that Appellant’s community supervision revocation would have, to Appellant’s acceptance of responsibility regarding all his children, and to his good relationship with them.  Our review of the record of the punishment hearing demonstrates the same.  Based on our review of the record, we cannot conclude that Appellant has satisfied his burden to prove ineffective assistance regarding trial preparation.

Regarding trial counsel’s alleged failure to timely and properly object at the punishment hearing, our review of the record of the punishment hearing shows no reversible error that Appellant could have preserved through objection.

As for the alleged failure to offer mitigation evidence, Appellant testified on direct examination at the punishment hearing that he had undergone brain surgery for an aneurysm a couple of years before the hearing, that, according to his doctor, the aneurysm was located in the behavioral lobe in the front of the head, and that the aneurysm could have caused a lot of his attitude change.  Appellant testified at the hearing on the motions for new trial that his trial counsel never asked him about psychological problems that he had after the surgery and that when confronted with difficult situations since the surgery, he tends to respond negatively and defensively, feeling as if he is under attack.  But Appellant conceded that his doctor did not tell him that such a reaction was “a direct result” of the surgery.  Appellant additionally testified that he had been bitten by a brown recluse spider during his probationary period and had asked his trial counsel to look into it because he could not work for about five weeks, but his trial counsel did not.

Trial counsel testified that he did not investigate Appellant’s medical condition beyond speaking with Appellant and reviewing the documents Appellant provided (referred to above) because Appellant told him that his medical condition did not have anything to do with any of the alleged violations except the failure to obtain gainful employment, an allegation that the State ultimately waived.  Trial counsel testified as follows:

Q. After having had the opportunity to discuss your client’s medical situation or history where years before [he] had had the [brain] aneurysm, let me ask you after having discussed with him and his responses, did you develop a strategy or approach as to what and how you would deal with the reference to the medical issues?

A. Yes.

Q. And what was that strategy?

A. I believe the strategy was the medical issues were not going to be relevant in this case because he had told [me] specifically, you know, I was led to believe after talking to him that the only parts that it actually affected were his ability to seek employment and — but as far as the other allegations, it didn’t apply to that.  And I explained to him that’s probably something you don’t want to throw in front of a court because you’re either going to muddy the water — you’re gonna muddy the water, it’s going to look like you’re not taking responsibility for your actions.

In 
Miller v. Dretke
, a case also involving brain injury, the Fifth Circuit held that the failure to investigate and present mitigating evidence in a noncapital case constitutes ineffective assistance of counsel.
(footnote: 7)  The court explained,

“[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.”  When assessing the reasonableness of an attorney’s investigation, we must “consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.”  To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial.

Turning to the facts of this case, we note that Manske was aware prior to the commencement of the punishment phase of Miller’s trial that Miller had suffered mental and emotional injuries as a result of her car accident.  Manske was also cognizant of the fact that these injuries comprised mitigating evidence, as indicated by his decision to elicit testimony about them from both Miller and her ex-husband.  Despite this knowledge, Manske failed to contact Miller’s treating physicians, and made no effort to call them as expert medical witnesses at trial.

We are mindful that “complaints of uncalled witnesses are not favored” given that “the presentation of testimonial evidence is a matter of trial strategy.”  In this case, however, Manske made his decision not to call Miller’s physicians as witnesses without speaking to them, and without even procuring their names.  In his affidavit, Manske offers no tactical or strategic explanation for this lack of investigation.  Rather, he points to his erroneous belief that Miller would accept the State’s plea bargain offer, and that Miller would be acquitted or given probation if she refused to accept the offer, as grounds for his failure to adequately prepare for the punishment phase of trial.
(footnote: 8)
 In that case, however, the record from the hearing on the motion for new trial contained detailed letters from several of Miller’s treating physicians and from a psychologist about Miller’s condition.  Here, Appellant’s attorney at the hearing on the motions for new trial offered evidence through Appellant’s testimony that he had found some medical records in Appellant’s probation file on the day of the hearing, but the record does not disclose any information provided in those records.  Additionally, in Appellant’s cases, the trial judge was the fact-finder, not a jury, and the trial judge expressed on the record in the hearing not only her disbelief of Appellant, but also her disdain for the theory that his brain injury should somehow have mitigated his punishment—“So [Appellant’s] testimony today that his aneurysm surgery made him into a liar would be mitigation evidence?”  Consequently, while trial counsel’s lack of investigation in these cases may well have been substandard,
(footnote: 9) we have no basis in the record for concluding that but for counsel’s deficiency, the result of the hearing would have been different.
(footnote: 10)  Accordingly, we cannot conclude that Appellant met his burden of proving that trial counsel provided ineffective assistance by failing to further investigate Appellant’s medical history.  The trial court therefore did not abuse its discretion by denying Appellant’s motions for new trial based on the claim of ineffective assistance. Having held that the trial court did not abuse its discretion by denying Appellant’s motions for new trial on either the claim of conflict of interest or the claim of ineffective assistance at trial, we overrule Appellant’s sole point and affirm the trial court’s judgments.

LEE ANN DAUPHINOT

JUSTICE

PANEL B: DAUPHINOT, WALKER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  January 25, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Charles v. State
, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004).

3:
Id.

4:
Id.

5:
Id.

6:
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Salinas v. State
, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); 
Mallett v. State
, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001); 
Thompson
 
v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); 
Hernandez v. State
, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

7:
420 F.3d 356, 364 (5th Cir. 2005).

8:
Id.
 at 361-62 (citations omitted).

9:
See id.
 at 364 (stating that Miller’s trial counsel’s decision to rely solely on the testimony of Miller and her ex-husband regarding her medical condition “was supported by a complete lack of investigation; a failure that was constitutionally inadequate under the circumstances of this case”).

10:
See Strickland, 
466 U.S. at 687, 694, 104 S. Ct. at 2064, 2068.