COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-163-CR

NO.
2-05-164-CR

NO.
2-05-165-CR

 

 

MICHAEL JAMES HAIGHT                                                     APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








Appellant Michael James Haight pled guilty on
March 1, 2004 to three felonies:  assaultBbodily
injury of a family member, enhanced with one prior assault against a family
member; aggravated assault with a deadly weapon; and arson.  The trial court accepted Appellant=s pleas
and placed him on deferred adjudication community supervision for ten years in
each case.

About nine months later, in December 2004, the
State filed a petition to proceed to adjudication in each case, alleging that
Appellant had violated conditions of his community supervision.  On March 15, 2005, the trial court held a
hearing on the State=s petitions.  After the State waived its allegation
concerning Appellant=s failure to maintain
employment, Appellant pled true to each remaining allegationCthat he
used methamphetamine on three occasions, failed to take a drug test, and failed
to attend a drug offender education program (paragraph one); that he failed to
pay court costs (paragraph three); and that he failed to pay community
supervision fees (paragraph 3B).

After the trial court heard evidence on the issue
of punishment, it adjudicated Appellant guilty of each offense and sentenced
him to ten years= confinement for each assault
and fifteen years= confinement for arson, with the
sentences to run concurrently.  The trial
court denied Appellant=s motions for new trial.

In one point, Appellant contends that the trial
court abused its discretion by denying his motions for new trial.  Because we hold that the trial court did not
abuse its discretion, we affirm the trial court=s
judgments.








We review the denial of a motion for new trial
for an abuse of discretion.[2]  We do not substitute our judgment for the
trial court=s judgment.[3]  We view the evidence in the light most
favorable to the trial court=s ruling
and presume that all reasonable findings that could have been made against
Appellant were so made.[4]  Only when no reasonable view of the record
could support the trial court=s ruling
do we conclude that the trial court abused its discretion by denying the motion
for new trial.[5]

As we held in this matter when ordering a hearing
on Appellant=s motions for new trial,
Appellant=s claims of ineffective
assistance at punishment and conflict of interest at punishment are the only
claims in his motions for new trial that may properly be raised at this
juncture.








In Appellant=s brief,
he Astands
on the record@ regarding his conflict of
interest claim.  Because the claim was
litigated at the hearing, however, we believe that it is in the interest of all
concerned to address it.  In support of
his claim of conflict of interest, Appellant=s sworn
motions for new trial set out the following allegations.  Trial counsel had represented Appellant=s former
wife, the complainant in one of the cases used to enhance his conviction.  Trial counsel informed Appellant that he was
representing him in the hearing to proceed to adjudication and punishment only
because Appellant=s former wife had asked him
to.  When Appellant=s former
wife grew angry with Appellant, trial counsel sent him a letter saying that he
would no longer represent Appellant because the fee-payment schedule was no
longer acceptable.  Later, trial counsel
told Appellant that he was only trying to scare him and that he would still
represent him.








Evidence at the hearing on the motions for new
trial, however, conflicted with Appellant=s sworn
motions.  Trial counsel testified that
while the ex-wife had been a former client of his, that representation had
terminated before he began representing Appellant.  Further, he sent a fee letter demanding
payment that was overdue because Appellant had not paid him yet, not because of
any alleged conflict between Appellant and his ex-wife.  Trial counsel also testified that he had
never dated the ex-wife or been out with her socially and that he was unaware
of the alleged conflict between Appellant and his ex-wife until he read
Appellant=s motions for new trial.  Finally, the ex-wife wrote a letter on
Appellant=s behalf in support of his
desire to remain on community supervision, and that letter was admitted at the
punishment hearing.  Based on the
applicable standard of review, we cannot say that the trial court abused its
discretion by denying Appellant=s
motions for new trial as to the conflict of interest claim.  As to the ineffective assistance claim, in his
motions, Appellant specifically contended that trial counsel failed to discuss
the punishment hearing until the day before the hearing; did not prepare for
the punishment hearing in any way, including failing to discuss testimony with
Appellant or his wife, who was called as a witness; failed to make timely,
proper objections at punishment; and failed to offer mitigating evidence.  To establish ineffective assistance of
counsel, an appellant must show by a preponderance of the evidence that his
counsel=s
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for counsel=s
deficiency, the result of the trial would have been different.[6]








Appellant=s
testimony at the hearing on his motions for new trial, and that of his current
wife, mirrored his allegations in the sworn motions.  But, regarding the preparation for the
punishment hearing, trial counsel testified that he had at least two
face-to-face meetings with Appellant and several telephone conversations,
including one that lasted forty-five minutes to an hour.  He testified that the initial meeting lasted
about two hours.  Another meeting lasted
about ninety minutes.  Trial counsel
testified that the State made a firm offer in January 2005, which Appellant
rejected, and that he and Appellant then specifically went over

$                  
the need to have Appellant testify, especially about his state of mind
and how he had learned from his past experiences,

 

$                  
evidence concerning Appellant=s failure to obtain gainful employment because of
medical issues,

 

$                  
Appellant=s methamphetamine use and
positive drug test, and

 

$                  
Appellant=s failure to pay fines
because of his lack of employment.

 

Trial counsel also testified that he reviewed
medical documents that Appellant provided, but they were receipts, billing
statements, and pamphlets describing medical conditions, not substantive
medical reports.








Regarding preparing Appellant=s wife
to testify, trial counsel offered no evidence, but Appellant=s wife
testified on cross-examination in the hearing that she testified at the
punishment hearing to being pregnant, to the detrimental effect that Appellant=s
community supervision revocation would have, to Appellant=s
acceptance of responsibility regarding all his children, and to his good
relationship with them.  Our review of
the record of the punishment hearing demonstrates the same.  Based on our review of the record, we cannot
conclude that Appellant has satisfied his burden to prove ineffective
assistance regarding trial preparation.

Regarding trial counsel=s
alleged failure to timely and properly object at the punishment hearing, our
review of the record of the punishment hearing shows no reversible error that
Appellant could have preserved through objection.

As for the alleged failure to offer mitigation
evidence, Appellant testified on direct examination at the punishment hearing
that he had undergone brain surgery for an aneurysm a couple of years before
the hearing, that, according to his doctor, the aneurysm was located in the behavioral
lobe in the front of the head, and that the aneurysm could have caused a lot of
his attitude change.  Appellant testified
at the hearing on the motions for new trial that his trial counsel never asked
him about psychological problems that he had after the surgery and that when
confronted with difficult situations since the surgery, he tends to respond
negatively and defensively, feeling as if he is under attack.  But Appellant conceded that his doctor did
not tell him that such a reaction was Aa direct
result@ of the
surgery.  Appellant additionally
testified that he had been bitten by a brown recluse spider during his
probationary period and had asked his trial counsel to look into it because he
could not work for about five weeks, but his trial counsel did not.








Trial counsel testified that he did not
investigate Appellant=s medical condition beyond
speaking with Appellant and reviewing the documents Appellant provided
(referred to above) because Appellant told him that his medical condition did
not have anything to do with any of the alleged violations except the failure
to obtain gainful employment, an allegation that the State ultimately
waived.  Trial counsel testified as
follows:

Q.     After having had the opportunity to discuss your client=s medical situation or
history where years before [he] had had the [brain] aneurysm, let me ask you
after having discussed with him and his responses, did you develop a strategy
or approach as to what and how you would deal with the reference to the medical
issues?

 

A.     Yes.

 

Q.     And what was that strategy?

 

A.     I believe the strategy was the medical issues were not going to
be relevant in this case because he had told [me] specifically, you know, I was
led to believe after talking to him that the only parts that it actually
affected were his ability to seek employment and C but as far as the other
allegations, it didn=t apply to that.  And I explained to him that=s probably something you
don=t want to throw in front
of a court because you=re either going to muddy
the water C you=re gonna muddy the water,
it=s going to look like you=re not taking
responsibility for your actions.

 








In Miller v. Dretke, a case also involving
brain injury, the Fifth Circuit held that the failure to investigate and
present mitigating evidence in a noncapital case constitutes ineffective
assistance of counsel.[7]  The court explained,

A[S]trategic choices made
after less than complete investigation are reasonable precisely to the extent
that reasonable professional judgments support the limitations on
investigation.@  When assessing the reasonableness of an
attorney=s investigation, we must Aconsider not only the
quantum of evidence already known to counsel, but also whether the known
evidence would lead a reasonable attorney to investigate further.@  To establish that an attorney was ineffective
for failure to investigate, a petitioner must allege with specificity what the
investigation would have revealed and how it would have changed the outcome of
the trial.

 

Turning to the facts of this case, we note that Manske was aware prior
to the commencement of the punishment phase of Miller=s trial that Miller had
suffered mental and emotional injuries as a result of her car accident.  Manske was also cognizant of the fact that
these injuries comprised mitigating evidence, as indicated by his decision to
elicit testimony about them from both Miller and her ex‑husband.  Despite this knowledge, Manske failed to contact
Miller=s treating physicians,
and made no effort to call them as expert medical witnesses at trial.

 








We are mindful that Acomplaints
of uncalled witnesses are not favored@ given
that Athe
presentation of testimonial evidence is a matter of trial strategy.@  In this case, however, Manske made his
decision not to call Miller=s
physicians as witnesses without speaking to them, and without even procuring
their names.  In his affidavit, Manske
offers no tactical or strategic explanation for this lack of
investigation.  Rather, he points to his
erroneous belief that Miller would accept the State=s plea
bargain offer, and that Miller would be acquitted or given probation if she
refused to accept the offer, as grounds for his failure to adequately prepare
for the punishment phase of trial.[8]








In that case, however, the record from the
hearing on the motion for new trial contained detailed letters from several of
Miller=s
treating physicians and from a psychologist about Miller=s
condition.  Here, Appellant=s
attorney at the hearing on the motions for new trial offered evidence through
Appellant=s testimony that he had found
some medical records in Appellant=s
probation file on the day of the hearing, but the record does not disclose any
information provided in those records. 
Additionally, in Appellant=s cases,
the trial judge was the fact-finder, not a jury, and the trial judge expressed
on the record in the hearing not only her disbelief of Appellant, but also her
disdain for the theory that his brain injury should somehow have mitigated his
punishmentCASo
[Appellant=s] testimony today that his
aneurysm surgery made him into a liar would be mitigation evidence?@  Consequently, while trial counsel=s lack
of investigation in these cases may well have been substandard,[9]
we have no basis in the record for concluding that but for counsel=s
deficiency, the result of the hearing would have been different.[10]  Accordingly, we cannot conclude that
Appellant met his burden of proving that trial counsel provided ineffective
assistance by failing to further investigate Appellant=s
medical history.  The trial court
therefore did not abuse its discretion by denying Appellant=s
motions for new trial based on the claim of ineffective assistance. Having held that the trial court did not abuse
its discretion by denying Appellant=s
motions for new trial on either the claim of conflict of interest or the claim
of ineffective assistance at trial, we overrule Appellant=s sole
point and affirm the trial court=s
judgments.

 

LEE
ANN DAUPHINOT

JUSTICE

PANEL B:   DAUPHINOT, WALKER, and MCCOY, JJ.

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED:  January 25, 2007

 











[1]See Tex. R. App. P. 47.4.





[2]Charles v. State, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004).





[3]Id.





[4]Id.





[5]Id.





[6]Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas
v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); Mallett v. State,
65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001); Thompson v. State, 9
S.W.3d 808, 812 (Tex. Crim. App. 1999); Hernandez v. State, 988 S.W.2d
770, 770 (Tex. Crim. App. 1999).





[7]420 F.3d 356, 364 (5th Cir. 2005).





[8]Id. at
361-62 (citations omitted).





[9]See id. at
364 (stating that Miller=s trial counsel=s decision to rely solely on the testimony of Miller
and her ex-husband regarding her medical condition Awas
supported by a complete lack of investigation; a failure that was
constitutionally inadequate under the circumstances of this case@).





[10]See Strickland, 466 U.S. at 687, 694, 104 S. Ct. at 2064, 2068.