Opinion issued November 6, 2009






















In The

Court of Appeals

For The

First District of Texas







NO. 01-08-00026-CR







ZACHARY ALLEN VOORHEES, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 177th District Court

Harris County, Texas

Trial Court Cause No. 1129320






MEMORANDUM OPINION

 Appellant, Zachary Allen Voorhees, pleaded guilty to the offense of unlawful
restraint. See Tex. Penal Code Ann. § 20.02 (Vernon 2003). Pursuant to a plea
agreement with the State, the trial court deferred an adjudication of guilt, place
appellant on five years of community supervision, and assessed a $500 fine. We
decide whether the trial court abused its discretion in denying appellant's motion for
new trial based on his allegations that he received ineffective assistance of counsel,
which rendered his plea involuntary. We affirm.

Facts and Procedural History

 Appellant's mother, Arlene Hamilton, drove him to visit the complainant, S.F.,
at her home on December 21, 2006. The complainant contended that she and
appellant walked to a nearby park to talk about appellant's recent break up with his
girlfriend, Chelsea Farthing. The complainant contended that, when they reached a
secluded area of the park, appellant penetrated her vagina with his finger and forcibly
attempted to have sexual intercourse with her. Appellant and the complainant were
18 years old and 15 years old, respectively, at the time that the incident occurred.

 However, appellant claimed that when he and the complainant got to the park,
they stopped to sit down on the swings and the complainant tried to sit on his lap
"liked she wanted to be his girlfriend." Appellant claimed that he told the
complainant that he was not interested and that they talked a little longer before
walking back to the complainant's house. While he was still at the complainant's
house, appellant made up with Farthing over the phone and told her that "he still loved
her." Appellant contended that the complainant then started crying. Not knowing
what to do, appellant called his mother to pick him up.

 Hamilton stated that when she arrived to pick appellant up, the complainant
walked with appellant to the car and gave appellant a hug as he left. Hamilton asked
appellant why the complainant was upset, and appellant explained that she was upset
because he had made up with his girlfriend.

 In February 2007, appellant heard rumors that the complainant was telling
people that he had sexually assaulted her. He went to his assistant principal at school
and wrote a statement denying all of the allegations. In March 2007, appellant
received a citation to appear in court because the complainant had accused him of
sexually assaulting her on December 21, 2006.

 Appellant moved to San Antonio during the summer of 2007 to live with his
grandparents. The complaint alleging that appellant committed a felony sexual assault
against the complainant was filed August 16, 2007. Appellant was arrested in Bexar
County and was returned to Harris County. On September 4, 2007, the Harris County
trial court found probable cause to detain appellant and committed appellant to the
Harris County Sheriff's Department. The trial court set bail at $30,000, and appellant
requested that he be appointed trial counsel. On September 6, 2007, the trial court
appointed trial counsel to represent appellant.

 Affidavits submitted with appellant's motion for new trial contained the
following averments concerning the conduct of appellant's appointed trial counsel. 
On the day trial counsel was appointed by the trial court, she met with appellant and
his mother. During her meeting with appellant, trial counsel informed appellant that
his case "looked winnable." Trial counsel stated that appellant asked her about "the
possibility of being granted [community supervision] and having that [community
supervision] transferred to San Antonio. . . ." Trial counsel asked the trial court about
the possibility of having a transfer to San Antonio in the event that appellant was
granted community supervision, and the trial court informed trial counsel that it would
consider such a transfer because of appellant's age and circumstances. Trial counsel
also talked to the prosecutor regarding the possibility of reaching a plea agreement
granting appellant community supervision, and she later informed appellant that the
State was offering a plea bargain that would require appellant's lifetime registration
as a sex offender. Appellant declined the offer and told trial counsel that he wanted
to take the case to trial because he was innocent. The trial court then set the
arraignment hearing for September 18, 2007, and the hearing was later reset for
October 3, 2007.

 On September 24, 2007, trial counsel left town on vacation and returned on
October 2, 2007. In a letter postmarked in October 2007, appellant asked Hamilton
to contact trial counsel and to ask her to come to his jail cell. His letter stated that he
could not "wait to beat this case" and that he wanted "to discuss a few things like
motions for a fast [and] speedy trial, [and a] motion for discovery (to see all
statements against [him])" with his trial counsel. Appellant's letter also expressed an
interest in getting his bail lowered so that he could make bond and be released from
custody. Hamilton stated that she unsuccessfully attempted to contact appellant's trial
counsel when she received this letter.

 Trial counsel saw appellant again on October 3, 2007 before the arraignment
hearing. At this time, appellant stated that he was eager to be released from custody. 
His affidavit stated:

When I got to court [on October 3, 2007] I wanted to get out. I did not
want to go back to my cell because of being beaten up. I saw [trial
counsel] that day and I asked her if there was a way that I could get out
but I did not want to have to register [as a sex offender for] my entire
life. . . . She came back and told me about a deal where I would plead to
a lesser charge of unlawful restraint and only face a ten year registration
requirement. I was so anxious to get out of jail, I agreed to take the deal
even though I had not done anything wrong with [the complainant]. 
[Trial counsel] went over the papers with me and I went out before the
clerk and then the judge and pleaded guilty.


The record reflects that appellant never reported the beatings to anyone prior to his
release after he entered his guilty plea. Hamilton also addressed appellant's decision
to plead guilty. Her affidavit stated:

He said that he had been in jail for 35 days and had not received any
statement of what the evidence was against him. On the way to court the
day before, the deputies called his name and his offense (sexual assault)
and other inmates were glaring at him. He said that he wanted to get
home ASAP. He went on to mention that the first thing that he said to
[trial counsel] was what do I have to sign to go home today?


 The plea agreement required appellant to plead guilty to the offense of unlawful
restraint, for which he would receive five years of deferred-adjudication community
supervision and would be required to register as a sex offender for 10 years. The plea
agreement also provided for his community supervision to be transferred to San
Antonio. Appellant signed a general admonishment form and an admonishment form
regarding registration as a sex offender, and he was admonished by the trial court. 
Appellant was 19 years old at the time that he entered his plea of guilty.

 The day following his release, Hamilton discussed with appellant his decision
to plead guilty. In her affidavit, Hamilton stated, "Later on, I asked [appellant] why
he pleaded guilty to an offense that made [him] a sex offender and he said, 'Mom, it's
just an ID.'" Hamilton stated that it was not until they had met with the court liaison
officer that appellant "finally realized the implications" of his plea.

 Through new counsel, appellant filed a motion for new trial on November 2,
2007, alleging ineffective assistance of counsel. The trial court conducted a hearing
on the motion through arguments of counsel and testimony by affidavits. Appellant,
Hamilton, and trial counsel all submitted affidavits that were admitted during the
hearing. Appellant also introduced the affidavits of Chelsea Farthing, his ex-girlfriend, and Febra Crist, Farthing's mother. Farthing's affidavit explained her
relationship with appellant and the complainant and related statements allegedly made
by the complainant that nothing had happened between herself and appellant. 
Farthing and Crist both stated that they had read a text message from the complainant
indicating that she had fabricated the complaint, but was not going to let it go. The
trial court denied the motion, but certified that appellant had the right to appeal. This
appeal followed.Motion for New Trial

 In four points of error, appellant argues that the trial court abused its discretion
in denying his motion for new trial on the grounds that his trial counsel's failure to
properly investigate his case denied him his right to effective assistance of counsel
under the United States and Texas Constitutions and rendered his plea involuntary.

 We review the trial court's refusal to grant a new trial for abuse of discretion. 
Charles v. State, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). When, as here, the
motion for new trial alleges ineffective assistance of counsel, we must determine
whether the trial court's determination of the ineffective assistance claim and denial
of the motion for new trial were clearly wrong and outside the zone of reasonable
disagreement. Anderson v. State, 193 S.W.3d 34, 39 (Tex. App.--Houston [1st Dist.]
2006, pet. ref'd). "We must view the evidence in the light most favorable to the trial
court's ruling and presume that all reasonable factual findings that could have been
made against the losing party were made against that losing party." Charles, 146
S.W.3d at 208. We review the trial court's determination of historical facts made
solely upon affidavits under a deferential standard. Id. at 210.

 In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme
Court enunciated the two-pronged test that we must use to evaluate ineffectiv-assistance-of-counsel claims. Hernandez v. State, 988 S.W.2d 770, 772 (Tex. Crim.
App. 1999). First, appellant must show that counsel's performance was deficient,
meaning that it fell below an objective standard of reasonableness. Strickland, 446
U.S. at 687-88, 104 S. Ct. at 2064. Second, appellant must show that the deficient
performance prejudiced the defense, meaning that there is a reasonable probability
that, but for counsel's unprofessional errors, the result of the proceeding would have
been different. Id. at 687, 694, 104 S. Ct. at 2065, 2068. The failure to make a
showing under either prong defeats a claim for ineffective assistance. Rylander v.
State, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2000).

 A record that shows that the trial court properly admonished a defendant creates
a prima facie showing that the plea was made voluntarily and knowingly. Martinez
v. State, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998). Upon this showing, the
burden shifts to appellant to show that the plea was involuntary. Id. A plea based on
advice of inadequate counsel is considered involuntary. Ex parte Burns, 601 S.W.2d
370, 372 (Tex. Crim. App. 1980). The record establishes that appellant was properly admonished. Appellant
initialed and signed a form admonishing him that he was charged with a state jail
felony and subject to confinement in state jail for up to two years and a fine of up to
$10,000. The admonishment form signed by appellant stated:

Joined by my counsel, I state that I understand the foregoing
admonishments and I am aware of the consequences of my plea. I am
mentally competent to stand trial and my plea is freely and voluntarily
made. I waive and give up any time provided to me by law to prepare
for trial. I am satisfied with the representation provided by my counsel
and I received effective and competent representation.


Appellant also initialed and signed a supplemental admonishment form regarding sex
offender registration. Specifically, he initialed the statement that "[i]f you are
convicted or placed on deferred adjudication for [unlawful restraint of a minor], your
duty to register generally does not expire until TEN years after your sentence or
community supervision ends." The sex offender registration admonishment form
included the following statement printed just above appellant's signature:

Before pleading guilty or nolo contendere, I received the above
admonishments from the court and was provided a copy of Chapter 62
in its entirety. In addition, my attorney explained to me the sex offender
registration requirements of Chapter 62 of the Texas Code of Criminal
Procedure. My plea of guilty or nolo contendere is not influenced by any
advice or information delivered by the Court, my attorney or any person
regarding sex offender registration requirements. I would have plead
guilty or nolo contendere regardless of the sex offender registration
requirements. These admonishment forms were also signed by his trial counsel and the trial
court. On the general admonishment form, trial counsel signed a statement that
averred, "I join in and approve the waivers and stipulations made by the defendant. 
It is my opinion that the defendant is mentally competent to stand trial, that all of the
defendant's statements were freely and voluntarily made, and that the defendant's plea
was freely and voluntarily entered." Trial counsel also signed a statement that she had
"fully advised [appellant] regarding the sex offender registration requirements under
Chapter 62 of the Texas Code of Criminal Procedure. I believe that this document
was executed by him knowingly and voluntarily after I discussed it and its
consequences with him."

 The trial court signed a statement which reads:

The defendant came before me and prior to accepting a plea of guilty or
nolo contendere, I have admonished the defendant of the fact the
defendant will be required to meet the registrations requirements of
Chapter 62 of the Texas Code of Criminal Procedure. . . . I find that the
Defendant's attorney has advised the defendant regarding the registration
requirements under Chapter 62 of the Texas Code of Criminal
Procedure. I further find that the defendant is aware of and understands
the registration requirements of Chapter 62 of the Texas Code of
Criminal Procedure and that his plea is knowingly and voluntarily made
understanding the consequences of the registration requirements of
Chapter 62 of the Texas Code of Criminal Procedure.


During arguments at the hearing on the motion for new trial, the State argued that the
plea papers that appellant had signed "indicate[d] exactly everything he was told"
about the consequences of his plea. Regarding appellant's appearance before the trial
court to make his plea, the State observed, "I know [the trial court] says, 'Are you
pleading guilty because you are guilty,' and [the trial court] will not accept the plea
unless that response is 'yes' without hesitation. And [appellant] did that."

 We conclude that the record establishes that the trial court properly admonished
appellant. See Martinez, 981 S.W.2d at 196-97. Therefore, the burden shifted to
appellant to establish that the plea was involuntary due to ineffective assistance of trial
counsel. See id. at 197.

 Ex parte Moody frames the Strickland test in the context of determining
whether counsel was inadequate when an appellant has pleaded guilty:
"[V]oluntariness of the plea depends on (1) whether counsel's advice was within the
range of competence demanded of attorneys in criminal cases, and if not, (2) whether
there is a reasonable probability that, but for counsel's errors, he would not have
pleaded guilty and would have insisted on going to trial." Ex parte Moody, 991
S.W.2d 856, 857 (Tex. Crim. App. 1999) (quoting Ex parte Morrow, 952 S.W.2d 530,
536 (Tex. Crim. App. 1997)). We recognize a strong presumption that trial counsel's
performance fell within the wide range of reasonable professional assistance. 
Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; Rylander, 101 S.W.3d at 110. 
Appellant must overcome this presumption. Id. To defeat the presumption of
reasonable professional assistance, "[a]ny allegation of ineffectiveness must be firmly
founded in the record, and the record must affirmatively demonstrate the alleged
ineffectiveness." McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996),
overruled on other grounds, Mosely v. State, 983 S.W.2d 249 (Tex. Crim. App. 1998). 
In evaluating the effectiveness of counsel under the first prong, we look to the totality
of the representation and the particular circumstances of appellant's case. Thompson
v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

 Appellant's trial counsel had a duty to make reasonable investigations or to
make a reasonable decision that made particular investigations unnecessary. 
McFarland, 928 S.W.2d at 501 (quoting Strickland, 466 U.S. at 691, 104 S. Ct. at
2066). Trial counsel's decision not to investigate must be directly assessed for
reasonableness in all the circumstances, and we must give deference to trial counsel's
judgments. Wiggins v. Smith, 539 U.S. 510, 521-22, 123 S. Ct. 2527, 2535 (2003). 
We will not reverse the trial court unless the consequence of trial counsel's failure to
investigate is that the only viable defense available to the accused is not advanced and
the result of the proceeding would have been different but for counsel's failure. 
McFarland, 928 S.W.2d at 501.

 Appellant argues that trial counsel "failed to conduct any meaningful
investigation into the facts of the case." Appellant complains that trial counsel failed
to interview him about the facts of the case, and, therefore, she failed to locate the
evidence discussed by Farthing, Crist, and Hamilton in their affidavits and appellant's
two earlier statements that he was not guilty. Appellant averred that trial counsel
spent 10 minutes with him and that "[s]he never asked me for my version of what
happened or got any information from me. She never told me what was in the offense
report or what the specific allegations were." Hamilton stated in her affidavit that trial
counsel met with her for 10 minutes on September 6, 2007, the day that trial counsel
was appointed to represent appellant.

 This testimony is largely contradicted by trial counsel's own affidavit. Trial
counsel stated in her affidavit that she spoke for at least an hour with Hamilton on
September, 6, 2007 and that Hamilton assured trial counsel that her son was innocent. 
Trial counsel also stated that she met with appellant that same day and that appellant
told her that he was innocent of the charges against him. She stated that they had a
"meaningful discussion of all of the State's evidence against him." The record also
reflects that trial counsel informed appellant of the State's initial plea bargain, which
appellant rejected, and spoke with the trial court regarding appellant's desire to
receive community supervision and have his community supervision transferred to
San Antonio, where he had been living with his grandparents prior to his arrest. Trial
counsel also stated in her affidavit that Hamilton had contacted her numerous times
by telephone, almost to the point of harassment, and that trial counsel was
professional and diligent in returning Hamilton's calls. Trial counsel also pointed to
the fact that appellant decided to accept a plea bargain less than a month after she had
been appointed to represent him, but that in that short time, she had investigated the
State's file and interviewed appellant and Hamilton. She also counseled appellant,
prior to his decision to reject the State's first plea bargain, that she believed that his
case was winnable.

 Furthermore, trial counsel's and the State's case files contained notes regarding
appellant's version of events--that the complainant had hugged him before he left her
house and that she was making up the accusations against him because she was
jealous that he had made up with his girlfriend. This evidence corroborates trial
counsel's representation that she had more lengthy discussions with appellant and his
mother than appellant claims in his affidavit and that she did conduct some kind of
investigation. The trial court was within its discretion to find trial counsel's affidavit
more credible than appellant's or Hamilton's. See Charles, 146 S.W.3d at 208-10
(stating that we must presume that trial court made all reasonable factual findings that
could have been made against losing party and that we apply deferential standard of
review to trial court's determination of historical facts based on affidavits).

 Appellant also complains that trial counsel failed to provide advice to him
before he entered his guilty plea. However, appellant's and Hamilton's affidavits
show that trial counsel had communicated to both of them that she thought that
appellant's case was winnable. Trial counsel stated in her affidavit that appellant "was
eager to enter into a guilty plea" when she met with him on October 3, 2007. Her
affidavit also stated: 

I explained the range of punishment to him. I told him, "your mom is
not going to like this." He said, "I don't care, it's my life." [Appellant]
was able to communicate clearly with me and I feel he fully understood
the consequences of his guilty plea at the time he entered into it.
[Appellant] knew he was entitled to a jury trial.This evidence supports the trial court's presumed finding that trial counsel did advise
appellant regarding his desire to enter a guilty plea. See Charles, 146 S.W.3d at
208-10; see also Strickland, 466 U.S. at 691, 104 S. Ct. at 2066 ("The reasonableness
of counsel's actions may be determined or substantially influenced by the defendant's
own statements or actions. Counsel's actions are usually based, quite properly, on
informed strategic choices made by the defendant and on information supplied by the
defendant . . . ."); Novak v. State, 837 S.W.2d 681, 685 (Tex. App.--Houston [1st
Dist.] 1992, pet. ref'd) (stating that decision of how to plead to charges against him
is reserved to client) (citing Burnett v. State, 642 S.W.2d 765, 768 n.8 (Tex. Crim.
App. 1982)).

 We hold that appellant has failed to show that trial counsel's investigation and
advice was not within the range of competence demanded of attorneys in criminal
cases. See Ex parte Moody, 991 S.W.2d at 857.

 Even if trial counsel's representation of appellant fell short of her professional
duty, appellant would have to show that but for counsel's errors, he would not have
pleaded guilty and would have insisted on going to trial. See Ex parte Moody, 991
S.W.2d at 858. Making this assessment "will depend in large part upon a prediction
whether the evidence likely would have changed the outcome" of the proceedings. 
Ex parte Briggs, 187 S.W.3d 458, 469 (Tex. Crim. App. 2005) (citing Hill v.
Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985)). 

 Appellant's appellate brief seems to argue that he lacked information regarding
all of the evidence that could possibly have been introduced in a potential trial and,
therefore, that he felt compelled to enter a guilty plea. Appellant's brief points to the
fact that the State's case was based on the delayed outcry and testimony of a 15-year-old girl, with no witness or medical corroboration, and the fact that other witnesses
and evidence would have shown that the complainant had a motive to fabricate the
claim that she was assaulted and made inconsistent statements. However, the record
shows that trial counsel was aware of the basis of the State's case, that she had already
been told by both appellant and Hamilton that he was not guilty, that trial counsel and
appellant were both aware that Hamilton could testify that the complainant had
hugged appellant after the alleged assault took place and was upset that appellant had
made up with his girlfriend, and that trial counsel and appellant had had a "meaningful
discussion" about the State's evidence. The record also demonstrates that trial counsel
had advised appellant prior to his decision to plead guilty that she thought that his case
was winnable, that she advised him of the consequences of his plea, and that she
warned him that his mother would not approve of his decision to enter a guilty plea.

 The record supports the presumed finding of the trial court that, at the time of
his plea, appellant was already aware of the viable defenses available to him. See
McFarland, 928 S.W.2d at 501; see also Charles, 146 S.W.3d at 208-10. Therefore,
we cannot conclude that appellant would have decided to go to trial even if he had
known the exact testimony that could have been given by Farthing and Crist. See Ex
parte Briggs, 187 S.W.3d at 469. We hold that the trial court was within its discretion
in denying appellant's motion for new trial. See Charles, 146 S.W.3d at 208;
Anderson, 193 S.W.3d at 39.

 We overrule all of appellant's points of error.




Conclusion

 We affirm the judgment of the trial court.

 





 Tim Taft (1)

 Justice

 


Panel consists of Justices Bland, Sharp, and Taft.


Justice Sharp, dissenting. Opinion to follow.


Do not publish. Tex. R. App. P. 47.2(b).
1. Justice Tim Taft, who retired from the First Court of Appeals effective June 1, 2009,
continues to sit by assignment for the disposition of this case, which was submitted
on January 27, 2009.