PD-0143-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/6/2015 12:00:23 PM
Accepted 7/6/2015 1:30:43 PM
ABEL ACOSTA
CLERK

**No. PD-0143-15**

IN THE

# TEXAS COURT OF CRIMINAL APPEALS

**AUSTIN, TEXAS**

_____

STATE OF TEXAS, *APPELLANT/RESPONDENT*

*v.*

CYNTHIA AMBROSE, *APPELLEE/PETITIONER.*

_____

ON PETITION FOR DISCRETIONARY REVIEW FROM THE FOURTH COURT OF APPEALS
CAUSE NO. 04-13-00788-CR

TRIED IN THE 226TH JUDICIAL DISTRICT COURT, BEXAR COUNTY, TEXAS
TRIAL CAUSE NO. 2012-CR-10002

_____

# PETITIONER'S BRIEF ON
# PETITION FOR DISCRETIONARY REVIEW

_____

DAYNA L. JONES
Bar No. 24049450
LAW OFFICE OF DAYNA L. JONES
1800 McCullough Avenue
San Antonio, Texas 78212
(210) 255-8525
(210) 223-3248 – FAX
DAYNAJ33@GMAIL.COM

i

# IDENTITY OF PARTIES AND COUNSEL

**TRIAL JUDGE:**
Honorable Sid Harle, 226th District Court

**FOR THE STATE OF TEXAS:**
S. Patrick Ballantyne – Counsel at trial and on appeal
Bar No. 24053759
Zachary Edwards – Counsel at trial
Bar No. 24049524
Assistant District Attorneys
101 W. Neuva, 7th floor
San Antonio, Texas 78205
Phone: 210-335-2311

**APPELLEE/PETITIONER'S COUNSEL:**
Scott Sullivan – Counsel at trial
Bar No. 19483350
4 Dominion Drive, Suite 250
San Antonio, TX 78257

Dayna L. Jones – Counsel on appeal
Bar No. 24049450
LAW OFFICE OF DAYNA L. JONES
206 E. Locust Street
San Antonio, Texas 78212
Phone:  210-255-8525
Daynaj33@gmail.com

**FOURTH COURT OF APPEALS PANEL:**
Justice Luz Elena D. Chapa – Authored the opinion
Justice Marialyn Barnard – Concurring Opinion
Chief Justice Sandee Bryan Marion

# TABLE OF CONTENTS

Parties to the Case ............................................................................................................i

Table of Authorities ...................................................................................................... iii

Statement of the Case.......................................................................................................1

Statement of Procedural History.....................................................................................2

Statement of Facts ............................................................................................................2

Grounds for Review .........................................................................................................8

Argument and Authorities...............................................................................................9

Prayer for Relief..............................................................................................................20

Certificate of Service .....................................................................................................21

Certificate of Compliance ..............................................................................................21

# TABLE OF AUTHORITIES

**Cases:**

*Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App., 1984) ....... 8,10,12,13,15-16,20

*Amadeo v. Zant*, 486 U.S. 214, 223 (1988) ................................................................9

*Archie v. State*, 340 S.W.3d 734 (Tex. Crim. App. 2011) .....................................19

*Blake v. State*, 971 S.W.2d 451 (Tex.Crim.App.,1998) ...................................18,20

*Casanova v. State*, 383 S.W.3d 530 (Tex.Crim.App.,2012) ..................................14

*Charles v. State,* 146 S.W.3d 204, 208 (Tex.Crim.App.2004) ...........................9,13

*Ex parte Wheeler*, 203 S.W.3d 317 (Tex.Crim.App.,2006) ..................... 8-10,13,15

*Garcia v. State*, 2013 WL 4033890, 5 (Tex.App.-Corpus Christi, 2013) .............17

*Herron v. State*, 86 S.W.3d 621 (Tex.Crim.App., 2002) ........................... 14,16-17

*Igo v. State*, 210 S.W.3d 645 (Tex.Crim.App.,2006) ........................................ 10-11

*Manzi v. State,* 88 S.W.3d 240, 244 (Tex.Crim.App.2002) ...................................10

*Oregon v. Kennedy*, 456 U.S. 667 (1982) ........................................................ 8-9,13

*State v. Ambrose*, --S.W.3d--, 2015 WL 102194 (Tex.App.-San Antonio,2015)
................................................................................................ 2,13,14,16-19

*State v. McKnight*, 213 S.W.3d 915 (Tex.Crim.App.,2007) ............................. 10-11

## STATEMENT OF THE CASE

Petitioner (hereinafter Ambrose) was a kindergarten teacher who was tried and convicted of the misdemeanor offense of official oppression in the 226th Judicial District Court in Bexar County, Texas. At trial, the state alleged that Ambrose directed and allowed other kindergarten students in her classroom to strike another student who had been brought to her class by his teacher, Barbara Ramirez, for discipline.

Ambrose filed a motion for new trial alleging, amongst other things, that she suffered egregious harm because the jury instruction did not contain an accomplice witness instruction. After hearing testimony, argument, and reviewing additional briefing by both parties, the trial judge granted Ambrose a new trial on the ground that the jury charge failed to contain an accomplice witness instruction. Because no objection to the jury charge was raised at trial, the trial court applied the correct egregious harm standard and issued findings of facts and conclusions of law to support his ruling.

The State appealed arguing (1) the witness was not an accomplice and (2) Ambrose did not suffer egregious harm. The Fourth Court reversed the trial court's ruling on the egregious harm issue and affirmed the conviction, but did not address whether Ramirez was an accomplice or not.

This petition challenges the appellate courts authority to substitute a trial courts factual findings and harm analysis with its own view of the evidence.

## STATEMENT OF PROCEDURAL HISTORY

After the trial judge granted Ambrose's motion for a new trial and issued written findings of facts and conclusions of law, the state appealed. On January 7, 2015 the court of appeals reversed the trial court's ruling and affirmed the conviction. *State v. Ambrose*, --- S.W.3d ----, 2015 WL 102194 (Tex.App.-San Antonio, 2015). The appellate court found that Ambrose did not suffer egregious harm. Justice Barnard issued a concurring opinion expressing "concern about the effect of the [egregious harm] standard on the trial court's authority to grant a new trial in a case such as this." *Id*. at *6. No request for rehearing was filed.

Ambrose's Petition for Discretionary Review was granted by this Court on May 20, 2015 and oral argument will be permitted.

## STATEMENT OF FACTS[1]

Ambrose taught kindergarten for Salinas Elementary School. Barbara Ramirez, another kindergarten teacher, testified that on May 2, 2012 her student named A.N. was bullying and hitting other students. 3RR17. Ramirez used the school's "buddy pass" system which allowed her to take A.N. to another teacher's

---

[1] The facts in the record, and the trial courts factual findings that are supported by the record, are essential to issues before this Court. Thus, a discussion of the facts is presented.

classroom. 3RR18. This "buddy pass" system was a tool teachers relied on to address a student's behavioral problems and was meant to discipline a child without sending them to the principal's office. 3RR16. Ramirez walked A.N. to Ambrose's classroom and explained that A.N. had been bullying other students. 3RR19. According to Ramirez, Ambrose instructed A.N. to sit next to her and then instructed the students to line up and hit A.N. Ramirez testified that she watched as the students lined up and stood by as seven students struck A.N. 3RR20-21. Ramirez also did nothing when, according to her, she heard Ambrose tell the students to hit him harder. 3RR20-21. Ramirez testified that she knew she had witnessed an assault, but left A.N. in the classroom, and returned to her own class. 3RR21-22. She later sent another student to retrieve A.N so that he could return to her class. 3RR22.

Testimony at trial revealed that Ramirez took at least two weeks to report the incident to the administration. 3RR93. Record evidence presented in the motion for new trial also established that the Judson I.S.D. police had investigated the allegations and filed at large charges against Ramirez for official oppression. 1CR7.[2] The report also found that Ramirez failed to timely report the incident.

A.N., who was 7 years old at the time of trial, testified he did not know the difference between a truth and a lie. 3RR55. He did not know his own birthday.

_____

[2] This portion of the clerk's record was erroneously filed in cause number 04-13-00576-CR on November 4, 2013 and contains 22 pages. The documents filed in cause number 04-13-00576-CR were consolidated with this case by order of the Fourth Court on June 23, 2014.

3RR56. He also did not know Ms. Ambrose and he did not remember a day when his teacher took him to her class. 3RR57. Only after the prosecutor reminded A.N. of what they had talked about earlier did he change his story. *Id*. He was then asked again whether he remembered being taken to another classroom and this time he said "Yes." But when asked if he remembered what happened while in the classroom and he said "No." 3RR57-58. He did not know if a lady in the classroom where he was taken had asked him if he was being a bully. *Id*. He did not remember being called a bully in someone else's classroom. *Id*. He did remember a day when other kids hit him, but could not say what happened. 3RR58-59. A.N. finally said "Yes" when asked if he remembered "when a teacher put you – had you sit in the classroom and then had other students go hit you on the back?" 3RR58. But A.N. could not tell the court what happened. 3RR58-59. He denied that Ramirez took him to the other classroom and told the teacher that he was misbehaving. 3RR59. He did not remember anyone asking "what do we do with bullies?" 3RR58. He finally agreed that he remembered other kids hitting him and when asked how many students hit him, A.N. testified "I think like 21." 3RR59. This is three times the number that Ramirez alleged.

When asked if this testimony was a lie, A.N. stated "Um" and then prosecutor interjected "Because we can't lie" and A.N. said "No." 3RR61. He was asked "So did anything that you said today not happen?" and he responded "I don't know."

3RR61. The prosecutor then asked again "…did everything you told us today happen?" and A.N. stated "Yes." 3RR61. A.N. testified that he told his brothers about the incident but that they did not believe him. 3RR63. He did not tell his parents about it. 3RR62.

W.N., one of A.N.'s older brother, testified that his brother told him he was hit by other students. W.N. never told his parents because he did not believe his brother. 3RR81-82. B.N, another one of A.N.'s older brothers, testified similar to W.N. 3RR85.

Gerrie Spellman, who was the Assistant Principal, testified that she became aware of the allegations against Ambrose when Ramirez reported them to her and Principal Large. 3RR91. Spellman began an investigation which included talking to Ambrose. 3RR91. Spellman claimed Ambrose told her and Large "that she had instructed her students to hit the student on the arm, but not too hard so that the student would know how it felt to be bullied." 3RR92. According to Spellman, Ambrose also said only two or three students hit him and when the next student hit him too hard she stopped them. 3RR93.

Spellman testified that Ramirez did not report the incident for two weeks. 3RR93. Spellman agreed that it is unbelievable that Ramirez waited two weeks to report this incident. 3RR96. After Spellman and Large spoke with Ambrose they sent her back to her classroom to teach her students. 3RR98. Spellman agreed that

by sending Ambrose back to the classroom after the meeting it represented that Spellman believed Ambrose was capable of teaching students. 3RR99.

Principal Large testified that his initial reaction to Ramirez's claim was surprised that Ambrose would be involved in anything like that. 3RR102. He was also overall surprised because he had never heard of anything like this in his tenure as an educator. 3RR102. He testified similar to Spellman's account of the events, but added that Ambrose had a good disciplinarian record prior to these allegations. 3RR112. The State rested its case.

Ambrose testified as the sole witness for the defense. She denied ever telling the principal or vice principal that she instructed the students to hit another student. 3RR115. After the meeting with Large and Spellman, she was instructed to go back to her classroom to teach. *Id.* She agreed that some of the things she said in the teacher's lounge were true, but they were in reference to her friend who was recently murdered. Apparently, the husband had killed her friend but was planning on going to the rosary and Ambrose was upset. She denied saying someone had tattled on her. 3RR115-116. Ambrose testified that she never instructed the students to hit another student. 3RR116. However, when Ramirez brought A.N. to her and explained to Ambrose in front of the other students that A.N. was being a bully, Ambrose did ask Ramirez if she wanted to scare him. Ramirez said yes. Ambrose asked the students what his consequence should be and one student said that the kids

6

he hit should get to hit him back. Ambrose testified that she asked the students if they wanted to show him what it felt like. She was only expecting the students to say yes and then Ambrose would tell A.N. "You see, would you like for us to hit you?" 3RR117-118. But, before she turned around she heard one of her students hit A.N. 3RR118. She immediately told the students to get away from him and she never intended for any student to hit A.N. 3RR118. Ramirez did leave A.N. in the classroom with Ambrose after the incident. *Id*. The defense then rested its case.

The jury found Ambrose guilty of the offense of official oppression and Ambrose filed a Motion for New Trial. Ultimately, the Motion for New Trial was granted because the trial court failed to instruct the jury on the accomplice-witness rule with regards to Ramirez. After the State filed a Notice of Appeal, Judge Harle issued written findings of facts and conclusions of law. Relevant to this appeal, he found: "Based on the evidence presented at trial through Ms. Ramirez's own testimony, and supported by other evidence presented to this court, the Court finds that Ms. Ramirez was an accomplice as a matter of law to the offense of official oppression. At the very least, the evidence supports that she is an accomplice as a matter of fact." 1CR7.[3] Judge Harle also made the ultimate conclusion: "This Court was present for all the testimony in this case, has reviewed the legal arguments presented by the State and Defense, and has reviewed the law on this issue. This

---

[3] This citation is from the supplemental clerk's record that was filed on November 4, 2013 and contains 22 pages.

Court concludes that the failure to include the jury instruction on the accomplice witness rule caused Ms. Ambrose egregious harm, thus requiring a new trial." 1CR10.[4]

## GROUNDS FOR REVIEW

1.  When a trial judge issues findings of fact and conclusions of law that find a defendant suffered egregious harm from unobjected to jury charge error, does applying the *Almanza* egregious harm standard on appellate review violate and conflict with Texas (*Ex parte Wheeler*, 203 S.W.3d 317 (Tex.Crim.App.,2006)) and United States Supreme Court (*Oregon v. Kennedy*, 456 U.S. 667 (1982)) precedent that a reviewing court must defer to a lower court's factual findings?

2.  Under the egregious harm standard, does an appellate court violate Texas (*Ex parte Wheeler*, 203 S.W.3d 317 (Tex.Crim.App.,2006)) and United States Supreme Court (*Oregon v. Kennedy*, 456 U.S. 667 (1982) precedent when it ignores a trial court's factual findings and substitutes its own view of the evidence for that of the trial?

3.  If the egregious harm standard does apply on direct review in this case, did the appellate court correctly apply the egregious harm standard when it only considered the testimony that supported the state's case and not "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole" as required by *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App., 1984)?

---

[4] This citation is from the supplemental clerk's record that was filed on November 4, 2013 and contains 22 pages.

# ARGUMENT AND AUTHORITIES

## I.     Ground One and Ground Two

### (Grounds One and Two are briefed together)

## A.     Precedent Requires a Reviewing Court to Defer to a Lower Court's Factual Findings and Credibility Determinations

The Supreme Court has long held that a reviewing court must defer to a trial court's factual findings that are supported by the record. *Oregon v. Kennedy*, 456 U.S. 667, 677 fn. 7 (1982) ["It seems entirely reasonable to expect, therefore, that appellate judges will continue to defer to the judgment of trial judges who are 'on the scene' in this area, and that they will not inexorably reach the same conclusion on a cold record at the appellate stage that they might if any one of them had been sitting as a trial judge."]; *See also Amadeo v. Zant*, 486 U.S. 214, 223 (1988) ["'[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.' *Anderson v. Bessemer City, supra,* 470 U.S., at 573–574, 105 S.Ct., at 1511."]

Texas also follows this rule as well.  *See Ex parte Wheeler*, 203 S.W.3d 317, 325 -326 (Tex.Crim.App.,2006). In *Wheeler*, this Court held that it is "a matter of law" that "reviewing courts defer to the trial court's implied factual findings that are supported by the record, even when no witnesses testify and all of the evidence is

submitted in written affidavits." *Wheeler* at 325-326 ["*See, e.g., Charles v. State,* 146 S.W.3d 204, 208 (Tex.Crim.App.2004) (reviewing courts "must view the evidence in the light most favorable to the trial court's ruling and presume that all reasonable factual findings that could have been made against the losing party were made against that losing party" even when all evidence is submitted by affidavit); *Manzi v. State,* 88 S.W.3d 240, 244 (Tex.Crim.App.2002) ( "Trial courts are the traditional finders of fact, and their determinations of historical fact are entitled to deference" even when the facts are in the form of an affidavit)."]

This Court also emphasized in *Wheeler* that trial judges who make factual determinations and who personally presided over the trial are "well-positioned to make credibility decisions." *Wheeler at* 326*. "*In *Peterson,* we stressed the importance of deferring to the trial court's assessment of the facts, including the prosecutor's state of mind. Here, as in other contexts, 'appellate courts review the facts in the light most favorable to the trial judge's ruling and should uphold it absent an abuse of discretion.'" *Wheeler* at 324.

**B.**   **In applying the *Almanza* Harm Standard, the Appellate Court Violated Prior Precedent and Substituted the Trial Court's Factual Findings with its View of the Facts**

In *Igo v. State*, 210 S.W.3d 645 (Tex.Crim.App.,2006) this Court concluded that the *Almanza*[5] egregious harm standard, as opposed to abuse of discretion

---

[5] *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.,1984).

standard, applied to unobjected to jury instruction error that is presented in a motion for new trial. *State v. McKnight*, 213 S.W.3d 915 (Tex.Crim.App.,2007). Following *McKnight* and *Almanza*, the Fourth Court of Appeals, found that Appellant did not suffer egregious harm from the trial court's failure to instruct the jury on the accomplice witness instruction.

However, the issues presented in this case are distinguishable from this Court's holdings in *Igo v. State*, 210 S.W.3d 645 (Tex.Crim.App.,2006) and *State v. McKnight*, 213 S.W.3d 915 (Tex.Crim.App.,2007). In those cases the trial court denied the motion for a new trial on the issue of unobjected to jury charge error. Thus, even if the judge did make factual findings in those cases, they were not in favor of the appellant and the appellant would be asking the reviewing court to disagree with the trial judge's findings of facts and conclusions of law. Furthermore, in *Igo* this Court held that a defendant is not entitled to have ubobjected to "jury charge error reviewed under a different harmd standard than would have applied to that error absent a motion for new trial." *Igo* at 645.

The trial court in this case correctly stated the egregious harm standard in its findings of fact and conclusions of law and applied it to the facts of the case to conclude that she suffered egregious harm. Specifically, the trial court found: "This Court was present for all the testimony in this case, has reviewed the legal arguments presented by the State and Defense, and has reviewed the law on this issue. This

Court concludes that the failure to include the jury instruction on the accomplice witness rule caused Ms. Ambrose egregious harm, thus requiring a new trial." 1CR6-10[6].

Judge Harle also found: "Based on the presentation of the evidence at trial and this Court's view of the evidence at the time of trial, this Court asked his court administration attorney to prepare jury instructions on accomplice as a matter of law and as a matter of fact to be submitted to the jury." 1CR6-10. Thus, at the time of trial and before the law was submitted to jury, the trial judge was of the opinion that the evidence required that the jury be given an accomplice witness instruction; when neither party requested it, he failed to *sua sponte* give the instruction.

The Fourth Court of Appeals applied the egregious harm standard in *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.,1984) and conducted its own review of the evidence, without deferring to the trial court's findings of fact and credibility determinations, to conclude that Ambrose did not suffer egregious harm. Thus, by its opinion, the appellate court disagreed with the trial judge, who was present for the trial testimony and was in the best position to gage the impact the testimony had on the jury, and substituted the trial judge's view of the evidence with its own. The

---

[6] This clerk's record was erroneously filed in cause number 04-13-00576-CR on November 4, 2013 and contains 22 pages. The documents filed in 04-13-00576-CR were consolidated with this case by order of the Fourth Court on June 23, 2014.

appellate court did so without finding that the trial judge's findings of facts were not supported by the record.

In a concurring opinion, Justice Barnard noted: "Based on the standard of review regarding egregious harm, I must concur with the majority. However, I write separately to express my concern about the effect of the standard on the trial court's authority to grant a new trial in a case such as this." *Ambrose* at *6. She also expressed concern that the "evidence in this case, even within a single witness's testimony, was contradictory." *Id*. "The trial court heard this testimony, as well as other contradictory testimony and was in a far better position to judge the impact on the jury and the case as a whole." *Id*. Ultimately, she concluded that she "fail[ed] to see how the trial court could ever grant a motion for new trial and have that ruling upheld on appeal…I believe this standard of review completely usurps the trial court's authority when that court was in the best position to determine the effect of its decision not to *sua sponte* instruct the jury with regard to the accomplice-witness rule." *Id*. The appellate court also mistakenly believed that a defendant could *never* meet the difficult standard.

The egregious harm standard under *Almanza* as applied to a situation where a trial court made factual findings and was in the best position to determine whether the error caused egregious harm violates Texas and Supreme Court precedent.

*Oregon v. Kennedy*, 456 U.S. 667, 677, 102 S.Ct. 2083, 2090 (1982); *Wheeler* at 325-326; *Charles v. State,* 146 S.W.3d 204, 208 (Tex.Crim.App.2004).

Furthermore, when reviewing whether non-accomplice evidence was sufficient to corroborate an accomplice witness, a court examines the evidence's "reliability or believability." *Herron v. State*, 86 S.W.3d 621, 632 (Tex.Crim.App.,2002). Thus, whether the non-accomplice evidence was sufficient to establish that a defendant did not suffer egregious harm credibility of a witness is critical. The factual findings of a trial judge, who was present at trial and in the best position to make that determination, must be given great deference.

When a trial court grants a motion for new trial and applies the correct standard of harm to the jury charge error, its factual findings and credibility determinations, even the implied findings that are not expressly found, should not be substituted by the appellate court's review of the evidence. By laying out the correct egregious harm standard, the trial court implicitly found that the corroborating evidence was "exceedingly weak—that is to say, evidence that, while it is legally sufficient to tend to connect, is nevertheless inherently unreliable, unbelievable, or dependent upon inferences from evidentiary fact to ultimate fact that a jury might readily reject." *Casanova v. State,* 383 S.W.3d 530, 539 (Tex.Crim.App.2012).

The Fourth Court's analysis of the evidence presented by the state found that the "non-accomplice corroborative evidence" was "relatively strong." *Ambrose* at *4. This clearly departs from the trial court's express and implied factual findings.[7] Even Justice Barnard's concurring opinion found that "evidence in this case, even within a single witness's testimony, was contradictory." *Id.* at *6.

Because the state's evidence in this case hinged entirely on testimony of its witnesses, without supporting physical evidence, the trial court's factual findings and application of the law to those facts hold great weight since he was in the best position to assess the demeanor of the witnesses and overall tone of the trial. *See Wheeler* at 324.

In cases such as this, a reviewing court should defer to the lower court's factual findings and only review for an abuse of discretion. This would allow a reviewing court to comport with U.S. and Texas precedent that a reviewing court must defer to a lower court's factual findings, would allow a reviewing court to determine whether the trial court applied the court standard of review, and would prevent an appellate court from substituting its judgment of the credibility of the evidence for that of a well-positioned trial court.

## II. Ground Three

---

[7] This statement is also not aligned with Justice Barnard's concurring opinion that found the "evidence in this case, even within a single witness's testimony, was contradictory." *Ambrose* at *6.

In *Almanza*, this Court held that in order to assess the harm caused when the jury was not properly instructed, we consider "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza,* 686 S.W.2d at 171. The appellate court did not review the entire jury charge, state of *all* of the evidence, and all relevant information contained in the trial record as a whole. The court limited its focus of corroborating evidence to Large and Spellman's testimonies from the state witnesses and one sentence from Ambrose's testimony. *Ambrose* at *4-5. Furthermore, there was an articulable basis to disregard the non-accomplice evidence relied on to corroborate the accomplice.

In *Herron v. State*, 86 S.W.3d 621 (Tex.Crim.App.,2002), this Court explained that when "determining the strength of a particular item of non-accomplice evidence, we examine (1) its reliability or believability and (2) the strength of its tendency to connect the defendant to the crime." *Id*. at 632. "[T]he reliability inquiry may be satisfied if: (1) there is non-accomplice evidence, and (2) there is no rational and articulable basis for disregarding the non-accomplice evidence or finding that it fails to connect the defendant to the offense." *Herron* at 633. Here, there was a "rational and articulable basis for disregarding the non-accomplice evidence" as evidenced by the trial court's findings of fact as well as

16

Justice Barnard's concurring opinion that the "evidence in this case, even within a single witness's testimony, was contradictory." *Ambrose* at *6.

In its analysis, instead of reviewing the record as a whole, the court focused on the testimony of two non-eyewitnesses, Principal Large and Assistant Principal Spellman, and one sentence from Ambrose's testimony when she asked her class: "Does anybody want to show him what it feels like?" *Ambrose* at *4-5. The testimony from Large was specifically called into question by Justice Barnard:

> "For example, the principal testified Ambrose admitted she told her students to strike A.N., and some students did, yet the principal later claimed there was reason to doubt Ramirez's report. He also admitted sending Ambrose back into the classroom without disciplinary action. The trial court heard this testimony, as well as other contradictory testimony and was in a far better position to judge the impact on the jury and the case as a whole." *Ambrose* at *6, (J. Barnard concurring).

The appellate court mentioned the "state of the jury charge", which included a general instruction that the witnesses were the sole judges of the witnesses credibility, but never conducted any analysis of the jury charge before concluding Petitioner did not suffer egregious harm. *Ambrose* at *5. The jury charge contained no language emphasizing that Ambrose needed to be connected to the crime charged with non-accomplice evidence, therefore this issue weighs in her favor. *Garcia v. State*, 2013 WL 4033890, 5 (Tex.App.-Corpus Christi, 2013) ["[N]othing in the jury charge emphasized to the jury the need to connect appellant to the crime with some non-accomplice evidence. *See Herron v. State,* 86 S.W.3d 621, 632

(Tex.Crim.App.2002) (en banc) (explaining that the purpose of the instruction is to inform the jury that it cannot use accomplice testimony unless some non-accomplice evidence connects the defendant to the crime). This factor weighs in favor of finding egregious harm."]

The court did look to the arguments of counsel, but only to find that the arguments focused on the credibility of the witnesses. *Ambrose* at *5. "The State argued there was no evidence any of them had an incentive to lie for each other." *Id*. This argument from the state is precisely the reason the legislature created the accomplice witness instruction – because accomplices often have reason to lie. *Blake v. State,* 971 S.W.2d 451, 451 (Tex.Crim.App.1998). Without Ramirez's statements to Large and Spellman and her testimony at trial, the state had no case. By emphasizing that its witnesses, including Ramirez, had no reason to lie for each other, this point weighs in favor egregious harm as well.

Viewing the record as a whole, the non-accomplice evidence failed to connect Ambrose to the offense charge, and this weighs in favor of egregious harm. In evaluating Ambrose's own testimony, the appellate court erroneously found that her statement "Does anybody want to show him what it feels like?..tended to connect her intent to the charged intent of subjecting A.N. to mistreatment by directing and allowing her students to strike him." *Ambrose* at *4. This testimony, even taken alone, does not express her desire for her students to hit A.N. And when taken in

context of her whole testimony, this statement shows that she *intended* to teach A.N. a lesson and to show the child that bullying other students would cause the students to want to bully you back. 3RR118. Her *intent* was to show A.N. that you should not hit other students by showing him that others would think that it was okay to hit him back. This does not connect her to the criminal intent of intentionally subjecting the child to mistreatment.

All of the other witnesses' testimonies were contradictory, even in themselves, and they were not eye witnesses. Furthermore, the other witnesses based their testimony regarding Ambrose's intent on information learned from Ramirez and this information cannot be used to corroborate Ramirez. *Archie v. State*, 340 S.W.3d 734 (Tex. Crim. App. 2011) ["An accomplice's out-of-court statement may not be used to corroborate him for purposes of art. 38.14."] A.N. was the only other person present in the classroom who testified for the State and his testimony, although he initially denied even knowing Ambrose or being mistreated in her classroom, was clearly inconsistent with any other witness' version of the events.[8] 3RR55-58. Furthermore, A.N.'s testimony, which was not even considered by the reviewing court, did not corroborate Ramirez. *See Statement of Facts supra*.

---

[8] In fact the Fourth Court's opinion did not even address A.N. or his brother's testimony as corroborating Ramirez. The appellate court only relied on the "non-accomplice corroboration from Principal Large and Vice Principal Spellmann, viewed together with Ambrose's admissions" to corroborate Ramirez. *Ambrose* at *5.

Ramirez was the only adult who was present when A.N. was taken to Ambrose's class. The appellate court's analysis presupposes that the jury believed every witnesses testimony, however, without the accomplice witness instruction, the jury may have very easily only believed Ramirez and rested its decision solely on her testimony. This is essentially why the accomplice witness instruction is important – so that the jury will not base its decision on the words of an accomplice who has reason to lie. *See Blake v. State,* 971 S.W.2d 451, 451 (Tex.Crim.App.1998). [The importance of the accomplice-witness rule "reflects a legislative determination that accomplice testimony implicating another person should be viewed with a measure of caution, because accomplices often have incentives to lie."] For these reasons, the court erred in its review of the corroborating evidence in this case and in its application of *Almanza's* egregious harm standard.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Ambrose prays this Court affirm the trial's court's decision to grant Ambrose a new trial, reverse the Fourth Court of Appeals' opinion affirming the conviction, and remand this case for a new trial.

Respectfully submitted:

__/s/Dayna L. Jones__
Dayna L. Jones

Bar No. 24049450
LAW OFFICE OF DAYNA L. JONES
1800 McCullough Avenue
San Antonio, Texas 78212
(210)-255-8525– office
(210)-223-3248—fax
Daynaj33@gmail.com

Attorney for Cynthia Ambrose

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was electronically sent to S. Patrick Ballantyne at sballantyne@bexar.org and to the State Prosecuting attorney *via* U.S. Mail at P. O. Box 13046 Austin, Texas 78711-3046 on July 6, 2015.

_\_\_*/s/Dayna L. Jones*\_\_\_\_\_
DAYNA L. JONES

**CERTIFICATE OF COMPLIANCE**

I certify that, according to Microsoft Word's word count, this document contains **4,544** words.

_\_\_*/s/Dayna L. Jones*\_\_\_\_\_
DAYNA L. JONES